# FUSARI, COMMISSIONER OF LABOR v. STEINBERG ET AL.

No. 73–848.   Argued October 15–16, 1974—Decided January 14, 1975

POWELL, J., delivered the opinion for a unanimous Court.  BURGER, C. J., filed a concurring opinion, *post*, p. 390. ·

*Donald E. Wasik,* Assistant Attorney General of Connecticut, argued the cause for appellant.  With him on the brief was *Robert K. Killian,* Attorney General.

*John M. Creane,* by appointment of the Court, *post,* p. 990, argued the cause for appellees.  With him on the brief were *Raymond J. Kelly* and *John A. Dziamba.**

MR. JUSTICE POWELL delivered the opinion of the Court.

This case comes to us on appeal from a three-judge District Court determination that the Connecticut "seated interview" procedures for assessing continuing

─────────

*\*Dennis R. Yeager, E. Richard Larson, Stephen M. Randels, John M. Levy, Jerry L. Covington, Marttie Louis Thompson, Stephen E. Gottlieb, C. Christopher Brown,* and *C. Lyonel Jones* filed a brief for the National Employment Law Project, Inc., et al. as *amici curiae* urging affirmance.

*Stephen P. Berzon, Stefan M. Rosenzweig, J. Albert Woll,* and *Bernard Kleiman* filed a brief for Ellenmae Crow et al. as *amici curiae.*

eligibility for unemployment compensation benefits violate the Due Process Clause of the Fourteenth Amendment. 364 F. Supp. 922 (Conn. 1973). Our independent examination of Connecticut law reveals that the State significantly revised its unemployment compensation system following the District Court's decision. Some of the amendments are designed to ameliorate problems that the court identified. In these circumstances, we think it inappropriate to decide the issues tendered by the parties. We therefore vacate the decision of the District Court and remand for reconsideration in light of the intervening changes in Connecticut law.

I

In Connecticut, unemployment compensation benefits are paid from a trust fund maintained by employer contributions. Appellant Fusari, State Commissioner of Labor and Administrator of the Unemployment Compensation Act, administers the fund. Under the Connecticut statute, a claimant first must file an initiating claim and establish his general entitlement to receive state unemployment compensation benefits. Conn. Gen. Stat. Rev. §§ 31–230 and 31–235 (1973). Thereafter, the claimant must report to the local unemployment compensation office biweekly and demonstrate continued eligibility for benefits for the preceding two-week period. The claimant must submit forms swearing to his availability for work and to his reasonable efforts to obtain employment during the period in question. He also must submit a form listing the persons to whom he has applied for employment during the preceding two weeks.

Upon receipt of the forms, the paying official may make routine inquiries. If no serious question of eligibility arises, immediate payment is made. If, however, the forms or responses to questions raise suspicion of possible disqualification, the claimant is directed to a

"seated interview" with a factfinding examiner for a more thorough inquiry into the possible factors that might render him ineligible for benefits. Although the claimant bears the burden of establishing eligibility, *Northrup* v. *Administrator*, 148 Conn. 475, 480, 172 A. 2d 390, 393 (1961); *Waskiewicz* v. *Egan*, 15 Conn. Supp. 286, 287 (1947), doubtful cases are to be decided in his favor. Conn. Gen. Stat. Rev. § 31–274 (c).

An examiner's favorable determination of eligibility results in immediate payment of benefits. If, however, the examiner concludes that the claimant is ineligible, no payment is made. Within a few days the claimant receives a written statement indicating the reasons for disqualification and notifying him of the right to appeal. Benefits for the period in question normally are withheld pending resolution of the administrative appeal.[1] The State's policy, sometimes honored in the breach, is that pendency of an appeal does not affect the claimant's eligibility to receive benefits for subsequent periods.[2]

This appeal arises from a class action challenging the legality of the procedures used for determining continued

---

[1] Prior to the 1974 amendments, the Administrator could authorize payment of benefits during pendency of an administrative appeal if "good cause" was shown. Conn. Gen. Stat. Rev. § 31–241. The record provides no indication of the frequency of such authorizations. One of the 1974 amendments requires that benefits be paid in accordance with the Administrator's determination, regardless of the filing of an appeal. The amendment removes the Administrator's specific authority to award benefits during appeal for "good cause shown." See Conn. Pub. Act 74–339, § 14 (1974). We cannot determine whether this amendment was intended to deprive the Administrator of the power to award benefits for cause following an adverse ruling of eligibility.

[2] The stipulation of facts indicates only that some claimants subsequently were denied benefits because they had appeals pending. App. 39a. It does not reveal the frequency of this occurrence.

eligibility for benefits.[3] Appellees asserted that Connecticut violated the federal statutory requirement that state procedures be designed reasonably to assure the payment of benefits "when due," 42 U. S. C. § 503,[4] and

---

[3] Each of the named plaintiffs had filed a valid initiating claim and received benefits for a period of time. Each subsequently was denied benefits following a seated interview in which the examiner concluded that he or she had made insufficient efforts to obtain employment. The District Court defined the class to be all present and future unemployment benefit recipients whose benefits were or would be subject to termination without a prior hearing, excepting those persons whose benefits terminate due to exhaustion of entitlement. 364 F. Supp. 922, 927–928.

[4] The "when due" requirement is one of a number of conditions imposed on state receipt of. federal assistance. The Federal Government plays a cooperative role in the implementation of state unemployment compensation programs, bearing the costs of administration of those programs that satisfy federal requirements. On determining that state laws and practices satisfy the standards of § 303 of the Social Security Act, 49 Stat. 626, as amended, 42 U. S. C. § 503, the Secretary of Labor must certify that the State should receive the amount that he considers necessary for the proper and efficient administration of such law during the fiscal year in which payment is made. § 502 (a).

In addition to imposing restrictions on·the fiscal administration of state unemployment compensation funds, § 303 establishes specific procedural safeguards for benefit claimants. 42 U. S. C. §§ 503 (a) (1) and (a) (3). It provides:

"(a) The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

"(1) Such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary of Labor shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Secretary of Labor to be

also that the Connecticut seated-interview procedures were constitutionally defective in failing to provide a pretermination hearing satisfying the standards of *Goldberg* v. *Kelly,* 397 U. S. 254 (1970). At appellees' request, a three-judge court was convened to hear the matter.[5]

The District Court's findings of fact provide some indication of the actual operation of the Connecticut system. The findings reveal that the reversal rate of appealed denials of benefits was significant, ranging from 19.4% to 26.1% during the periods surveyed.[6] The District Court also found that a significant delay was required for obtaining administrative review of the examiner's determination: 89.9% of the 461 intrastate appeals[7] filed in

---

*reasonably calculated to insure full payment of unemployment compensation when due;*

.    .    .    .    .

"(3) Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." (Emphasis added.)

[5] The action was brought pursuant to 42 U. S. C. § 1983 and 28 U. S. C. §§ 2201 and 2202. Jurisdiction was alleged under 28 U. S. C. § 1343. This Court's jurisdiction rests on 28 U. S. C. § 1253.

[6] During the period July 1971 to June 1972, there were 6,534 appealed denials, of which 26.1% were reversed. The reversal rate for July to October 1972 remained at approximately 26%, but fell to 19.4% during the three-month period from January to March 1973. 364 F. Supp., at 936–937, n. 28. The director of the Waterbury office testified that the reversal rate had fallen to 18.8% by May 1973. See App. 215a.

A more complete assessment of the operation of the Connecticut system might be obtained by attempting to determine the overall error rate for all denials of benefits. The District Court made no finding on this point.

[7] The State of Connecticut has entered into reciprocal agreements with other States, enabling claimants who have moved into Connecticut to rely on wage credits earned elsewhere. Appeals of denials of interstate claims often require transfer of information

the month of December 1972 required more than 100 days to resolve. The average delay during that period exceeded 126 days. Moreover, the court determined that the December 1972 figures probably were typical of the delays that might be encountered in other time periods.[8]

The District Court expressed serious reservations whether the Connecticut system satisfied the "when due" requirement of federal law. It felt foreclosed from so ruling on this statutory issue, however, by this Court's summary affirmance in *Torres* v. *New York State Dept. of Labor,* 405 U. S. 949 (1972). The District Court concluded that *Torres* was distinguishable on the constitutional issue, and held that the Connecticut procedures violated due process "because (a) a property interest has been denied (b) at an inadequate hearing (c) that is not reviewable *de novo* until an unreasonable length of time." 364 F. Supp., at 937–938. After suggesting a number of alterations of the state system that might raise its operation to a constitutionally adequate level, the court enjoined appellant from denying unemployment benefits under then-existing procedures without first providing a constitutionally sufficient prior hearing. *Id.,* at 938. At appellant's request, the District Court stayed its injunction pending resolution of an appeal to this

---

from the reciprocating State and thus consume a greater period of time.

[8] In 1973, the Connecticut administrative appellate procedure was the slowest in the Nation. Statistics reveal that during that calendar year the Commission decided only 5.3% of the appeals within 30 days. During that same period the Commission decided only 15.5% of appeals within 45 days and resolved appeals within 75 days of filing in only 31.4% of the cases. See Unemployment Insurance Statistics, Table 17B—Appeals Decisions Under State Programs, Time Lapse Between Date of Filing Appeal and Date of Decisions, January–December 1973. U. S. Dept. of Labor, Manpower Administration (March–April 1974).

Court. We subsequently noted probable jurisdiction. 415 U. S. 912 (1974).

II

Following our notation of probable jurisdiction, the Connecticut Legislature enacted major revisions of the procedures by which unemployment compensation claims are determined. Conn. Pub. Act 74–339 (1974).[9] Section 31–241, one of the sections under consideration in this appeal, was amended to require that examiners only consider evidence presented in person or in writing at a hearing provided for that purpose.[10]  *Id.,* § 14, amending Conn. Gen. Stat. Rev. § 31–241. The legislature also completely altered the structure of the Connecticut system of administrative review, substituting a two-tiered Employment Security Appeals Division for the Unemployment Compensation Commission. Conn. Pub. Act 74–339, *supra,* §§ 1–12.

The amended statute provides for the creation of a staff of referees to review the examiners' decisions *de novo.* § 15. Referees are to be appointed by an Employment Security Board of Review, § 9,[11] the three mem-

[9] The record available to us suggests that the Department of Labor was instrumental in encouraging reform. See Conn. H. Proc. 5132, 5151 (May 2, 1974). That record is silent as to whether the District Court's decision or this Court's notation of jurisdiction provided additional encouragement.

[10] As noted by the District Court, factfinding examiners often telephoned employers to obtain evidence relating to the validity of benefit claims. 364 F. Supp., at 925. The amendment appears designed to eliminate that practice.

[11] Under Connecticut's prior system, the Commissioners who decided appeals were appointed by the Governor. See Conn. Gen. Stat. Rev. § 31–238. The legislative debates indicate that they held other employment and served only on a part-time basis. See Conn. S. Proc. 2630; Conn. H. Proc. 5152. In revising the Connecticut system, the legislators expressed a desire to insulate the referee system from the influences of partisan politics. Conn. S. Proc. 2629; Conn. H. Proc. 5153–5154. The revised Connecticut sys-

bers of which are appointed by the Governor. § 3. The statute further provides that the referee section "shall consist of such referees as the board deems necessary for the prompt processing of appeals hearings and decisions and for the performance of the duties imposed by this act." § 9. Appeals from the referees' decisions are to be taken to the Employment Security Board of Review and thereafter to the state courts. §§ 15 and 21, amending Conn. Gen. Stat. Rev. §§ 31–242 and 31–248, and new § 25 added by the 1974 amendments.

The legislative history indicates that the Connecticut Legislature anticipated that these amendments would have a significant impact on the speed and fairness of the resolution of contested claims. Legislators repeatedly characterized the amendments as a "true reform" of important consequence. See Conn. S. Proc. 2578, 2624, 2629 (May 7, 1974). Particular emphasis was placed on the need to improve the State's treatment of administrative appeals. It was recognized that Connecticut's torpid system of administrative appeal was markedly inferior to those used in other States. Id., at 2578, 2621; Conn. H. Proc. 5133–5135, 5152 (May 2, 1974). Revision of the appellate system was designed to remedy that problem. In the words of one member of the House: "The bill . . . sets up a unique system which is designed to cut down that [appellate] backlog." Id., at 5152.

## III

The amendments to the Connecticut statute, which became effective on July 1, 1974, Conn. Pub. Act 74–339, § 36 (1974), may alter significantly the character of the

---

tem provides that referees must be members of the State's civil service, Conn. Pub. Act 74–339, § 9 (1974), and the history of the amendments clearly indicates that the referees' commitment to the processing of appeals will be full time. Conn. S. Proc. 2628, 2630; Conn. H. Proc. 5142, 5147.

system considered by the District Court. Although the precise significance of the amendment to § 31–241 is unclear, the court's concern for the absence of a right of confrontation, 364 F. Supp., at 935, may be diminished by the requirement that examiners base their decisions only on evidence submitted in person or in writing. Perhaps of greater importance is the revision of the State's system of administrative appeal. Both in distinguishing *Torres* and in determining that the Connecticut system failed to satisfy the minimal requirements of procedural due process, the District Court placed substantial reliance on the length of time required to obtain administrative review of the examiner's decision. The amendments to Connecticut law are designed to remedy this problem.

This Court must review the District Court's judgment in light of presently existing Connecticut law, not the law in effect at the time that judgment was rendered.[12] *Diffenderfer* v. *Central Baptist Church,* 404 U. S. 412, 414 (1972); *Hall* v. *Beals,* 396 U. S. 45, 48 (1969); *United States* v. *Alabama,* 362 U. S. 602, 604 (1960). We are unable meaningfully to assess the issues in this appeal on the present record.

Both the statutory and constitutional questions are significantly affected by the length of the period of deprivation of benefits.[13] The basic thrust of the

---

[12] Our determination of the existence and significance of Connecticut's amendments to its unemployment compensation act was largely unassisted by counsel. Indeed, initial examination of the briefs and consideration of oral argument led us to believe that the system considered by the District Court remained substantially intact. We find it difficult to understand the failure of counsel fully to inform the Court of these amendments to Connecticut law.

[13] The District Court ruled that our summary affirmance in *Torres* v. *New York State Department of Labor,* 405 U. S. 949 (1972), precluded any determination that the Connecticut system failed to satisfy the federal "when due" requirement. Appellees did not cross-appeal to question that ruling, and appellant maintains

statutory "when due" requirement [14] is timeliness. See *California Human Resources Dept.* v. *Java*, 402 U. S. 121, 130–133 (1971). While we can determine on this record that Connecticut's previous system often failed to deliver benefits in a timely manner,[15] we can only specu-

_____

that the issue is not before the Court. We observed in *United States* v. *Raines*, 362 U. S. 17, 27 n. 7 (1960), that an appeal under 28 U. S. C. § 1252 brings the "whole case" before the Court. Thus, issues that might provide alternative grounds for support of the District Court judgment can be considered by this Court even though not specifically presented by cross-appeal. The same principle governs appeals brought under 28 U. S. C. § 1253. We therefore have jurisdiction to decide the point, and we would feel compelled to re-examine a statutory claim that may be dispositive before considering a difficult constitutional issue. See *Rosado* v. *Wyman*, 397 U. S. 397, 402 (1970); *Harmon* v. *Brucker*, 355 U. S. 579, 581 (1958).

[14] See n. 4, *supra*.

[15] The District Court interpreted our summary affirmance in *Torres* to indicate that benefits are not "due" under § 303 until administratively deemed payable. 364 F. Supp., at 930. While this is a plausible reading of the evolution and affirmance of *Torres*, it is not one that we can endorse. Such a definition of the "when due" requirement of federal law would leave little vitality to *Java* and would nullify the congressional intention of requiring prompt administrative provision of unemployment benefits. See 402 U. S., at 130–133. By reading our summary affirmance in *Torres* at its broadest, the District Court heightened the tension between that judgment and our more considered disposition of *Java*. A narrower interpretation of *Torres* would have been appropriate.

Any statutory requirement that embodies notions of timeliness, accuracy, and administrative feasibility inevitably will generate fact-specific applications. In this instance, many of the factual distinctions that the District Court relied on to distinguish *Torres* on the constitutional issue apply equally to the "when due" question. For example, the delay in resolving administrative appeals is considerably greater in Connecticut than in the New York system, where administrative appeals were resolved in an average of 45 days. See *Torres* v. *New York State Dept. of Labor*, 321 F. Supp. 432, 439 (SDNY 1971). And, as the District Court observed, the *Torres* court apparently

late how the new system might operate. And, assuming that the federal statutory requirements were satisfied, it would prove equally difficult to assess the question of procedural due process.

Identification of the precise dictates of due process requires consideration of both the governmental function involved and the private interests affected by official action. *Cafeteria Workers* v. *McElroy,* 367 U. S. 886, 895 (1961); *Goldberg* v. *Kelly,* 397 U. S., at 263–266. As the Court recognized in *Boddie* v. *Connecticut,* 401 U. S. 371, 378 (1971): "The formality and procedural requisites for [a due process] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." In this context, the possible length of wrongful deprivation of unemployment benefits is an important factor in assessing the impact of official action on the private interests. Cf. *Arnett* v. *Kennedy,* 416 U. S. 134, 168–169 (1974) (opinion of POWELL, J.); *id.,* at 190, 192 (WHITE, J., concurring in part and dissenting in part). Prompt and adequate administrative review provides an opportunity for consideration and correction of errors made in initial eligibility determinations. Thus, the rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process. The record, of course, provides no indication of the promptness and adequacy of review under the new system. We are unable, therefore, to decide this appeal on its merits.

---

did not consider the probable accuracy of the challenged procedure in determining whether it adequately assured delivery of benefits "when due." See 364 F. Supp., at 936. We do not undertake to identify the combination of factors that justify the *Torres* decision. Having once decided the case summarily, we decline to do so again. We only indicate that the District Court should not have felt precluded from undertaking a more precise analysis of the statutory issue than it felt empowered to do in this case.

The judgment of the District Court is vacated, and the case remanded for reconsideration in light of the intervening changes in Connecticut law.

*It is so ordered.*

Mr. Chief Justice Burger, concurring.

I join the opinion of the Court; however, it may be useful to mention two points which bear further discussion. First, as the Court notes, *ante,* at 387 n. 12, all parties failed to inform us that after the District Court entered judgment the Connecticut Legislature significantly changed its unemployment compensation system. I agree with the Court that this failure is "difficult to understand." *Ibid.* It is disconcerting to this Court to learn of relevant and important developments in a case after the entire Court has come to the Bench to hear arguments.

Even at oral argument we were not informed of the changes in state law although both parties filed their briefs after the new statute was passed. The Connecticut Legislature appears to have changed the system at least in part to expedite administrative appeals and thereby treat claimants more fairly, see *ante,* at 380, 386, thus meeting in part, at least, the basis of the attack on the system. All parties had an obligation to inform the Court that the system which the District Court had enjoined had been changed; however, only a cryptic reference was made to the change of law. The appellees' brief is 122 pages long and notes the change once, at the end of a footnote. Brief for Appellees 65 n. 52. At that point appellees are contending that the long delay between the seated interview and administrative review of a decision to withhold benefits aggravates the defects which they contend exist in the seated interview itself. There appellees quote *Boddie* v. *Connecticut,* 401 U. S

371, 378 (1971), where the Court said: "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the *nature of the subsequent proceedings.*" (Brief for Appellees 64; emphasis appellees'.) Given the fact that the changes in the procedures may well have an effect on "subsequent proceedings," *ante,* at 386, the Court should have been explicitly advised that changes had occurred. The only reference to changes in the law actually gives the impression that their effect is negligible.

This Court must rely on counsel to present issues fully and fairly, and counsel have a continuing duty to inform the Court of any development which may conceivably affect an outcome.

Second, although I agree wholeheartedly with the Court's reasoned discussion of the tension between the summary affirmance in *Torres* v. *New York State Dept. of Labor,* 405 U. S. 949 (1972), aff'g 333 F. Supp. 341 (SDNY 1971), and the Court's opinion in *California Human Resources Dept.* v. *Java,* 402 U. S. 121 (1971), *ante,* at 388–389, n. 15, we might well go beyond that and make explicit what is implicit in some prior holdings. *E. g., Gibson* v. *Berryhill,* 411 U. S. 564, 576 (1973); *Edelman* v. *Jordan,* 415 U. S. 651, 671 (1974). When we summarily affirm, without opinion, the judgment of a three-judge district court we affirm the judgment but not necessarily the reasoning by which it was reached.* An

---

*Some are quick to use the district court opinion to define this Court's judgment. See Note, The Supreme Court, 1953 Term, 68 Harv. L. Rev. 96, 102 (1955); Note, Summary Disposition of Supreme Court Appeals: The Significance of Limited Discretion and a Theory of Limited Precedent, 52 B. U. L. Rev. 373, 409 (1972). Another common response to summary affirmances of three-judge-court judgments is confusion as to what they actually do mean. See Currie, The Three-Judge District Court in Constitutional Litigation, 32 U. Chi. L. Rev. 1, 74 n. 365 (1964); Shanks, Book Review, 84

unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument. Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established. *E. g., Edelman* v. *Jordan, supra,* at 671; *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337, 343–344 (1969) (Harlan, J., concurring); *id.,* at 350 (Black, J., dissenting); *Reynolds* v. *Sims,* 377 U. S. 533, 614 (1964) (Harlan, J., dissenting).

---

Harv. L. Rev. 256, 257–258, n. 17 (1970); Note, Impact of the Supreme Court's Summary Disposition Practice on its Appeals Jurisdiction, 27 Rutgers L. Rev. 952, 962 (1974); Note, 52 B. U. L. Rev., *supra,* at 407–415.