The **VALLEY LINE COMPANY** et al.,
Plaintiffs,

v.

The **UNITED STATES** of America and the Interstate Commerce Commission,
Defendants.

**Civ. A. No. 74–105.**

United States District Court,
W. D. Pennsylvania.

Jan. 30, 1975.

G. Daniel Carney, Thorp, Reed & Armstrong, Pittsburgh, Pa., Arthur L. Winn, Jr., Samuel H. Moerman, Paul M. Donovan, Washington, D.C., for plaintiffs.

Fritz R. Kahn, James Kurth, I.C.C., Washington, D.C., for I.C.C.

Richard L. Thornburgh, U.S. Atty., Pittsburgh, Pa., for the U.S.

Before WEIS, Circuit Judge, and DUMBAULD and SCALERA, District Judges.

## OPINION

SCALERA, District Judge.

### I

This is an action under the provisions of 28 U.S.C., sections 1336, 1398, 2284 and 2321–2325 and 5 U.S.C. sections 701–706, to set aside orders of the Interstate Commerce Commission (Commission) entered in its Finance Docket F26737, Katy Industries, Inc.–Control–Cenac Towing Co., Inc., 342 I.C.C. 666. Those orders held that Cenac Towing Co., whose transporation operations are exempted from regulation by the Commission, is not a "carrier" within the meaning of section 5(13) of the Interstate Commerce Act and that, therefore, the Commission does not have jurisdiction over the proposed acquisition of Cenac by Katy Industries, Inc., a company controlling the Missouri-Kansas-Texas Railroad.

Katy Industries, Inc. controls the Missouri-Kansas-Texas Railroad through ownership of 97 percent of the outstanding shares of the railroad's common stock. Although Katy is not a carrier, the Missouri-Kansas-Texas Railroad is a common carrier by railroad subject to Part I of the Act. (49 U.S.C. § 1 et seq.)

Cenac is a corporation engaged in water transportation. This transportation consists of the movement of crude oil, in bulk, from numerous storage platforms located in the Gulf of Mexico and in various bays, lakes and sounds to terminals and refineries located in Texas, Louisiana, Mississippi, Alabama and Florida, and other operations generally involving the transportation of oil, oil products or oil producing equipment. In addition, Cenac rents or charters tugboats and barges to the oil industry for the transportation of drill pipe, service trucks, pumps, motors, drill water, mud, and other items required in oil well construction. This latter renting and chartering of equipment brings Cenac within the jurisdiction of the Commission as a contract carrier by water under section 302(e) of the Act. (49 U.S.C. § 902(e))

Section 309(f) of the Act (49 U.S.C. § 909(f)) requires that a carrier obtain a permit from the Commission before engaging in the operations of a contract carrier by water. Section 302(e) of the Act provides for a procedure whereby the Commission may issue an order exempting the transportation activities of a contract carrier such as Cenac from regulation under Part III of the Act. Thus, section 302(e) of the Act states, in part:

"Whenever the Commission, upon its own motion or upon application of any interested party, determines that the application of the preceding sentence to any person or class of persons is not necessary in order to effectuate the national transportation policy declared in this Act, it shall by order exempt such person or class of persons from the provisions of this part . . . .."

In Cenac's case, the Commission has issued such exemptions.

The plaintiffs, The Valley Line Company, Union Mechling Corporation, The Ohio River Company, Gulf-Canal Lines, Inc., Federal Barge Lines, Inc., Dixie Cariers, Inc., and American Commercial Barge Line Company, are common carriers by water engaged in the transportation of commodities generally on the Mississippi River System including the Gulf of Mexico.

By application filed August 3, 1971, Katy Industries sought authorization under section 5(2) for the acquisition of Cenac. Section 5(2)(a)(i) of the Interstate Commerce Act declares that consolidation or mergers of carriers, joint acquisitions of carriers by other carriers, and acquisitions of two or more carriers by a non-carrier "shall be lawful, with the approval and authorization of the Commission." According to section 5(13), a "carrier," for the purposes of section 5(2), means *inter alia*, "a water carrier subject to Part III." Cenac, by virtue of its furnishing vessels for compensation, falls within the definition of "contract carrier by water" in section 302(e). However, because Cenac has been exempted from the provisions of the Act by the Commission, Katy moved, concurrent with its application, to dismiss the application on the ground that Cenac was not a carrier subject to Part III of the Act and consequently no approval of the proposed acquisition was required under section 5(2). Katy's motion was denied "without prejudice, pending consideration of the further development of the record."

The application was referred to an Administrative Law Judge for hearing and recommendation of an order. Hearings were held on five days in April, 1972, in Washington, D.C. Twenty-two parties protested the application. Seven of the protestants offered evidence. The Administrative Law Judge, in a decision served February 13, 1973, found that "so long as the exemption under section 302(e) is in effect, Cenac is not a water carrier within the meaning of section 5(13) and, therefore, section 5(2) is not applicable." 342 I.C.C. at 672.

The protestants filed exceptions to the report and recommended order of the Administrative Law Judge and petitioned for oral argument before the entire Commission. Katy replied to the exceptions and petition. In a decision and order served July 17, 1973, the Commission's Division 3 affirmed the Administrative Law Judge's findings and conclusions with minor modifications, finding that:

" . . . the Administrative Law Judge properly found that Cenac is not a water carrier within the meaning of Section 5(13) and our jurisdiction under Section 5(2), as regards the resulting common control of MKT and Cenac, cannot be invoked so long as Cenac's operations remain within the exemption conferred upon it under Section 302(e), the case herein for the indeterminate future. Accord IML Sea Transit Ltd. v. United States, 343 F.Supp. 32, 38 (N.D.Calif.1972), affirmed sub nom., Interstate Commerce Commission v. IML Sea Transit Ltd., Et. Al., 409 U.S. 1002 [93 S.Ct. 433, 34 L.Ed.2d 295] (1972), wherein the three-judge Federal court pertinently held that IML Sea Transit was not operating as a freight forwarder through its use of certain Hawaiian motor carriers subject to Part II of the Act until such time as the Commission exercised its power to consider or revoke the certificates of exemption granted to said Hawaiian motor carriers; . . ." 343 I.C.C. at 667.

Petitions for reconsideration were filed by protestants. Katy replied. Division 3 of the Commission, acting as an Appellate Division, denied the petitions in an order served January 21, 1974. At this juncture the proceeding became final. Plaintiffs filed this suit. Briefs were filed and oral argument held.

## II

It is undisputed that Cenac at this time is not engaged in any transportation operation regulated by the Interstate Commerce Commission. The evidence presented before the Commission by Cenac indicates that a small percentage of its business falls within the contract carrier definition of section 302(e). Thus, the exemption involved in this case covers very little of Cenac's total business. The remainder of Cenac's business is exempt for other reasons.

Cenac derives approximately 65% of its total revenues from the movement of crude oil (Exhibit 5, p. 5). This transportation is exempt under sections 303(b) (as bulk commodities) and 303(d) (as liquid products) of the Act. Another 30% of Cenac's revenues are accounted for by the transportation of diesel fuel (Exhibit 5, p. 5). This transportation also enjoys the statutory exemption of sections 303(b) and (d). The remaining 5% of Cenac's business consists of renting barges and tugboats on an hourly or daily basis to the petroleum industry (Exhibit 5, p. 5).

Under section 302(e), this last activity constitutes contract carriage by water. With respect to this portion of Cenac's business which normally would be subject to the Act, the Commission exempted Cenac because the vessels involved were furnished to non-carriers for use in marine construction exempted from the provisions of Part III of the Act. A. J. Cenac and O. J. Cenac Applications, 260 I.C.C. 818 (1943). See also 49 CFR § 1071.1 (1973).[1]

The Commission's decision that it does not have jurisdiction over the acquisition of Cenac by Katy is bottomed upon the conclusion that Cenac is not a carrier within the meaning of section 5(2) of the Act. This holding is in turn based upon the conclusion that since Cenac operates under temporary exemptions granted by the Commission under section 302(e) of the Act, Cenac is not a "water carrier subject to Part III" of the Act, within the meaning of section 5(13) and, therefore, the proposed acquisition and control of Cenac by Katy is not control of a second carrier within the Commission's jurisdiction under section 5(2).

However, the exemption provision of section 302(e) of the Act[2] by its terms is limited to exemption "from the provisions of *this part*" [meaning part III of the Interstate Commerce Act as amended]. The provisions of section 5(2) of the Interstate Commerce Act relating to protection of the public interest with respect to mergers and concentration of control over carriers are not found in "this part" but in Part I of the Act. In modified form, these provisions are derived from policies embodied in the original Interstate Commerce Act of 1887. They are of general importance, and quite distinct from the specific regulatory requirements with respect to water carriers established by Part III in 1940.

We agree with plaintiffs that Congress, in enacting section 5(2) of the Interstate Commerce Act, sought to establish criteria to be applied by the Commission in assessing the public consequences inherent in combinations of carriers. These criteria involve a determination of the public interest and na-

---

1. "PART 1071—EXEMPTION OF CONTRACT CARRIER OPERATIONS

   § 1071.1 *Oilfield equipment, Gulf States marshlands.*

   Contract carriers by water, insofar as they engage in leasing or chartering vessels for the purpose of transporting machinery, materials, supplies, and equipment incidental to, or used in, the construction, development, operating and maintenance of facilities for the discovery, development and production of natural gas and petroleum, to and from points in the marshland oilfields of Alabama, Florida, Mississippi, Louisiana and Texas be, and they are hereby, exempted from the requirements of Part III of the Interstate Commerce Act until the further order of the Commission."

2. Act of September 18, 1940, 54 Stat. 898, 930. In 49 U.S.C. § 903(e)(1) the passage reads "from the requirements of this chapter."

tional transportation policy, as well as the competitive impact of a carrier combination. The statutory tests under section 5(2) can be initially applied only by the Commission in its exercise of primary jurisdiction. The statutory criteria are not affected by whether one of the combining carriers is presently operating under a temporary exemption or under a more conventional operating certificate or permit.

We believe the Commission's admitted reliance upon the case of IML Sea Transit Ltd. v. United States, 343 F.Supp. 32 (N.D.Cal.) aff'd. sub nom., Interstate Commerce Commission v. IML Sea Transit Ltd., 409 U.S. 1002, 93 S.Ct. 433, 34 L.Ed.2d 295, reh. den. 409 U.S. 1118, 93 S.Ct. 895, 34 L.Ed.2d 703 (1972) is erroneous.[3]

We agree with the plaintiffs that the court in *IML* was construing a provision whose purpose was to result in the regulation of day-to-day transportation activities. Clearly, the Commission could subject IML to regulation as a freight forwarder at any time by removing the section 204(a)(4a) exemptions granted to the motor carriers it utilized. Stated another way, the activities sought to be regulated by the Commission were ongoing activities. The case *sub judice*, on the other hand, represents an issue of jurisdiction over a one-time merger or acquisition of assets.

Federal Maritime Commission v. Seatrain Lines, 411 U.S. 726, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973) is cited by the plaintiffs as support for the validity of the distinction between jurisdiction over a one-time acquisition and jurisdiction over continuing business activities.

The *Seatrain Lines'* case involved the issue of whether the Federal Maritime Commission had the power to approve mergers or acquisitions of carriers, thereby immunizing such transactions from the operation of the anti-trust laws. The Shipping Act contains no express provision conferring such jurisdiction on the Federal Maritime Commission, compared to the specific provisions of the Interstate Commerce Act, the Federal Communications Act, and the Federal Aviation Act, but does contain a broad provision empowering the Federal Maritime Commission to approve carrier "agreements." In rejecting the Federal Maritime Commission's claim that the power to approve an "agreement" encompassed the power to authorize a carrier acquisition, the Supreme Court pointed to (1) the Congressional pattern in contemporaneous and related statutes of including specific, unambiguous grants of authority to approve mergers and acquisitions, when it intended the agency to exercise such power (411 U.S. at 742–43, 93 S.Ct. 1773); (2) the legislative history of the Shipping Act, which indicated that the term "agreement" was used as a term of art (411 U.S. at 736–742, 93 S.Ct. 1773); (3) the settled legal principle that exemptions from the anti-trust laws must be strictly construed (411 U.S. at 733, 93 S.Ct. 1773); and (4) the fact that virtually all the seven categories of agreements listed in the statutes "are limited to on-going arrangements in which both parties undertake continuing responsibilities," in contrast to a "one-time, discrete transaction" (411 U.S. at 734, 93 S.Ct. at 1779).

While the Federal Maritime Commission in *Seatrain Lines* did not have ex-

---

**3.** A summary affirmance by the Supreme Court does not preclude us from examining the rationale behind a decision of another three-judge court. As the Chief Justice said in concurring in Fusari v. Steinberg et al., —— U.S. ——, 95 S.Ct. 533, 541, 42 L.Ed.2d 633 (1975): "When we summarily affirm without opinion the judgment of a three-judge District Court we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument. Indeed, upon fuller consideration of an issue under plenary review, the Court has not hesitated to discard a rule which a line of summary affirmances may appear to have established.

plicit Congressional authority to approve carrier mergers and acquisitions, such authority has been precisely delegated to Interstate Commerce Commission in section 5(2) of the Act. The United States Supreme Court in McLean Trucking Co. v. United States, 321 U.S. 67, 75, 64 S. Ct. 370, 375, 88 L.Ed. 544 (1943) pointed out that the Commission is "empowered to authorize and approve a consolidation either as applied for or as qualified by such terms and conditions as it deems 'just and reasonable,' if it finds that the merger 'will be consistent with the public interest.' Section 5(2)(b). In passing upon a proposed consolidation the Commission is required to 'give weight to . . . (1) The effect of the proposed transaction upon adequate transportation service to the public . . . .' " And more recently, the Supreme Court in Denver & R. G. W. R. Co. v. United States, 387 U.S. 485, 502, 87 S.Ct. 1754, 18 L.Ed.2d 905 (1967) noted that a carrier (or one who controls a carrier) must initiate consolidations under section 5(2) of the Act. It was obviously not the Congressional intent in section 5 of the Act to permit the ICC to avoid its exclusive and plenary authority to assess carrier acquisitions by stretching the form and rationale of a temporary operating exemption. The considerations which the Commission is compelled to weigh and consider in granting a temporary exemption under section 309(e) are not of the same order as those which must be applied in assessing acquisitions under section 5(2).

In light of the statutory purpose, we conclude that Cenac is a "carrier" within the meaning of section 5(13) of the Interstate Commerce Act. It follows, therefore, that although Cenac's transportation operations may be temporarily exempted from regulations by the Commission, the proposed acquisition of Cenac by Katy Industries, Inc. is subject to the approval of the Commission.

An appropriate order will be entered.

ORDER

And now, this 30th day of January, 1975:

It is ordered and decreed that:

The orders served July 17, 1973 and January 21, 1974 of the Interstate Commerce Commission, in which the Commission concluded that it did not have jurisdiction over the proposed acquisition by Katy Industries, Inc. of Cenac Towing Co., Inc., be and are hereby set aside; and

The Interstate Commerce Commission be and is hereby directed to proceed in accordance with this opinion.