**Richard B. KAY, Plaintiff,**

v.

**Ted W. BROWN et al., Defendants.**

**Civ. A. No. C–2–76–18.**

United States District Court,
S. D. Ohio, E. D.

May 6, 1976.

Richard B. Kay, Cleveland, Ohio, for plaintiff.

Thomas V. Martin, Asst. Atty. Gen., of Ohio, Richard V. Patchen, Robert B. Barnett, Jr., John A. Connor, II, Columbus, Ohio, for defendants.

Before JOHN W. PECK, Circuit Judge, KINNEARY and DUNCAN, District Judges.

## OPINION

DUNCAN, District Judge.

This matter is before the Court on the motion of defendants Ted W. Brown, Secretary of State of the State of Ohio, James A. Rhodes, Governor of the State of Ohio, and William J. Brown, Attorney General of the State of Ohio, to dismiss the complaint for failure to state a claim for which relief can be granted and on the motion of plaintiff for summary judgment.

A three-judge court was convened under the provisions of Title 28, United States Code, Section 2281. This Court has jurisdiction pursuant to Title 28, United States Code, Sections 1343(3), 2201 and 2202 to hear claims arising under the provisions of Title 42, United States Code, Section 1983.

Plaintiff Richard Kay challenges the constitutionality of R.C. 3513.191, and that portion of the 1976 Delegate Selection Plan for the Ohio Democratic Party which substantially incorporates the language of R.C. 3513.191 as a qualification for selection as a delegate or alternate to the Democratic National Convention.[1] Plaintiff and defend-

---

1. Rule 8(A) of the Delegate Selection Plan for the Ohio Democratic Party entitled "Qualifications of delegates or alternates" states

An Ohio delegate or alternate to the Democratic National Convention must be a resi-

dent of the State of Ohio, a qualified elector in the precinct in which his or her residence is located and a member of the Democratic Party. Such a delegate or alternate must also declare, under oath, that if elected as a delegate or alternate, he or she will qualify

ants[2] have entered into a stipulation of facts including the following facts relevant to our decision.

Plaintiff Kay voted in the May 1972 Ohio Primary Election of The American Independent Party. In the general election that year, The American Independent Party's candidate for President of the United States did not receive a minimum of 5% of the total vote cast in Ohio for president, and consequently The American Independent Party lost its ballot position and was no longer a political party under Ohio's election laws. See R.C. 3517.01.

Plaintiff has not voted in a primary election since 1972 although he was an independent candidate for the United States Senate in the November 1974 general election and was a candidate for mayor of the City of Cleveland in a non-partisan election in 1975. In the latter campaign he was affiliated with the Democratic Party and campaigned as a Democrat.

In early December, 1975, plaintiff began circulating petitions to run as a candidate for United States Senator in the June 1976 Ohio Democratic primary election. He sent a letter on December 19, 1975, to the Ohio Secretary of State asking whether his petitions would be accepted. Secretary of State Brown replied on December 23, 1975, that plaintiff's proposed candidacy was barred by R.C. 3513.191 because within the four calendar years preceding the June 1976 Democratic primary plaintiff had voted in the primary of another party.

The complaint alleges that plaintiff wants to run as a delegate for the Democratic National Convention but cannot do so because the 1976 Delegate Selection Plan for the Ohio Democratic Party disqualifies persons who "voted as a member of a different political party at any primary election

tion within the preceding four calendar years."

Two claims for relief are asserted. The first contends that R.C. 3513.191 unconstitutionally prohibits plaintiff Kay and members of his class from running as candidates for public office in the June 1976 Ohio primary election of the Democratic Party. The second claim for relief alleges that the 1976 Delegate Selection Plan for the Ohio Democratic Party unconstitutionally prohibits plaintiff Kay and members of his class from running as a candidate for delegate or alternate to the Democratic National Convention.

Plaintiff seeks to maintain this suit as a class action. The Court is required to determine "[a]s soon as practicable" after the suit is filed whether it may be maintained as a class action. Rule 23(c)(1), Fed.R. Civ.P. The stipulation of facts states that "there are former members of The American Independent Party who would also like to participate in the Democratic Party as candidates for either public office or party offices within the Democratic Party." The complaint alleges that these former members of The American Independent Party who would like to be candidates for either public or party office number in the thousands. They are precluded from doing so by operation of R.C. 3513.191 and the 1976 Delegate Selection Plan for the Ohio Democratic Party.

The general prerequisites of a class action are:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and ade-

for said position *and that he or she has not voted as a member of a different political party at any primary election within the preceding four calendar years.* (Emphasis added.)

2. Also named as defendants in addition to Ted W. Brown, James A. Rhodes and William J. Brown are Robert Strauss, Chairman of the Democratic National Committee and Paul Tipps, Chairman of the State Central Committee of the Ohio Democratic Party.

quately protect the interests of the class. Rule 23(a), Fed.R.Civ.P.

A class action may be maintained under Rule 23(b)(2) if the requirements of subdivision (a) are met and

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

The complaint pleads the existence of a Rule 23(b)(2) class for both the first and second claims for relief. There are questions of law common to the class; plaintiff Kay's claims are typical of the claims of the class; and, on the present record, it appears plaintiff will fairly and adequately protect the interests of the class. By invoking R.C. 3513.191 and the similar provisions of the 1976 Delegate Selection Plan for the Ohio Democratic Party, the defendants named in both the first and second claims for relief have "acted or refused to act on grounds generally applicable to the class . . . ."

■ The class of plaintiffs for the first claim for relief would include all persons who voted in the May 1972 American Independent Party primary election who now seek to run as candidates in the June 1976 Democratic Party primary election but are disqualified as candidates solely by operation of R.C. 3513.191. But the stipulation of facts does not establish the existence of a class with enough members to satisfy the numerosity requirement of Rule 23(a)(1). Other than the stipulation of facts concerning plaintiff Kay's candidacy, there is no evidence that any person who voted in the 1972 American Independent Party primary election has circulated petitions to run as a candidate for public office or has taken any steps to become a candidate in the June 1976 Democratic primary. Under these circumstances the Court cannot at this time certify the class alleged in the first claim for relief.

The class of plaintiffs for the second claim for relief would include all persons who voted in the May 1972 American Independent Party primary election who now seek to be delegates or alternates to the Democratic National Convention but are disqualified by the 1976 Delegate Selection Plan for the Ohio Democratic Party solely because they voted in that primary election. However, again the stipulation of facts does not establish the existence of a class with enough members to satisfy the numerosity requirement of Rule 23(a)(1). Further, it does not appear from a reading of the complaint or the stipulation of facts that any member of the alleged class has taken any steps to become a delegate to the Democratic National Convention. The Court cannot on this record certify the class alleged in the second claim for relief.

■ The Court will now turn to a consideration of the merits of plaintiff Kay's first claim for relief. The challenged statute, R.C. 3513.191, provides:

> No person shall be a candidate for nomination or election at a party primary if he voted as a member of a different political party at any primary election within the next preceding four calendar years.

The Supreme Court of Ohio has defined "calendar year" as the period of time from January 1 through December 31. *State ex rel. Gareau v. Stillman*, 18 Ohio St.2d 63, 64–65, 247 N.E.2d 461 (1969). The calendar years preceding the June 1976 primary election are, thus: 1972, 1973, 1974 and 1975. The fact that more than four 365-day periods will have passed between the May 1972 primary election and the June 1976 primary election does not save plaintiff from disqualification by operation of R.C. 3513.191. *State ex rel. Gareau v. Stillman, supra.*[3]

This section has already withstood constitutional attack in *Lippitt v. Cipollone*, 337 F.Supp. 1405 (N.D.Ohio 1971), *affirmed* 404 U.S. 1032, 92 S.Ct. 729, 30 L.Ed.2d 725 (1972). In *Lippitt* the plaintiff had voted in

---

3. In *Gareau* the relator was barred by R.C. 3513.191 from being a candidate in the Republican May 6, 1969 primary election because he

voted in the Democratic May 4, 1965 primary election.

the Republican primary election of May, 1970, and had also been a candidate for Congress in that election. Two years later he sought to be a congressional candidate in the primary election of The American Independent Party. A three-judge court held that Ohio had a compelling state interest in enacting and enforcing R.C. 3513.191. The United States Supreme Court summarily affirmed that decision. Since *Lippitt* the Supreme Court has, however, issued full opinions in several cases involving constitutional attacks on voter and candidate qualification statutes.

In *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), plaintiffs challenged the constitutionality of a New York statute which effectively required a voter to register eight months prior to a presidential primary and eleven months prior to a non-presidential primary. The Court upheld this voter registration requirement, finding that it served the legitimate state goal of preserving the integrity of the electoral process:

> [T]he notion of raiding, its potential disruptive impact, and its advantages to one side are not likely to be as apparent to the majority of enrolled voters nor to receive as close attention from the professional politician just prior to a November general election when concerns are elsewhere as would be true during the 'primary season,' which, for the country as a whole, runs from early February until the end of June. Few persons have the effrontery or the foresight to enroll as say, 'Republicans' so that they can vote in a primary some seven months hence, when they full well intend to vote 'Democratic' in only a few weeks. And, it would be the rare politician who could successfully urge his constituents to vote for him or his party in the upcoming general election, while at the same time urging a cross-over enrollment for the purpose of upsetting the opposite party's primary.

Yet the operation of section 186 requires such deliberate inconsistencies if large-scale raiding were to be effective in New York. Because of the statute, it is all but impossible for any group to engage in raiding.

A similar registration provision in Illinois of twenty-three months was struck down in *Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973). The Court found that the challenged statute had the effect of restricting a voter's freedom to change his political party affiliation. Contrary to the statute at issue in *Rosario*, which merely "imposed a time limit on enrollment" in a political party, 414 U.S. at 60, 94 S.Ct. at 309, the Illinois law had the effect of " 'locking' a voter into an unwanted party affiliation from one election to the next." 414 U.S. at 60, 94 S.Ct. at 309. Thus unlike petitioners in *Rosario* who could have avoided the voting disability by merely effecting a timely registration, the voters in *Kusper* were absolutely precluded from voting in the 1972 Democratic primary by having participated in the 1970 Republican primary. This absolute preclusion acted to prevent Illinois voters from exercising their constitutional right of freedom of association with the political party of their choice. While the prevention of "raiding" was just as legitimate a goal for Illinois as it had been for New York, the Supreme Court found that this goal could not justify a law which infringed a basic constitutional right. Since "less drastic means" were available to Illinois to effect this goal, the Court declined to uphold the law as serving a legitimate state interest.

Finally, in *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) the Supreme Court upheld a California law which prohibited the two appellants from running as independent candidates for elective office because they had been affiliated with a political party not less than six months prior to the primary.[4] Although

4. To be an independent candidate under California law the candidate was required to file a statement:

that the candidate is not, and was not at any time during the one year preceding the immediately preceding primary election at which a

noting that considerations may vary where "qualifications for candidates rather than for voters are at issue," 415 U.S. at 732, 94 S.Ct. at 1280, the Court nevertheless, in upholding the disaffiliation requirement, observed that the interests of the State, "recognized in *Rosario*, are very similar to those that undergird the California waiting period; and the extent of the restriction is not significantly different." 415 U.S. at 734, 94 S.Ct. at 1281. It found that the prohibition against party affiliation California applied to independent candidates prevents

> candidacies prompted by short-range political goals, pique, or personal quarrel. It is also a substantial barrier to a party fielding an "independent" candidate to capture and bleed off votes in the general election that might well go to another party.

*Storer v. Brown*, 415 U.S. at 735, 94 S.Ct. at 1282. Because the state had a legitimate state interest in the stability of its political process and because it concluded that the disaffiliation requirement furthered this goal without unduly penalizing or curtailing a candidate's legitimate interest in seeking independent status, the Supreme Court found the California statute to be a constitutionally valid election law. Ohio, as did California in *Storer*, evidently believes "that splintered parties and unrestrained factionalism may do significant damage to the fabric of government." 415 U.S. at 736, 94 S.Ct. at 1282. To prevent such from occurring, Ohio enacted R.C. 3513.191. The defendants argue that the statute implements three compelling state interests: it precludes candidacies prompted by short-range goals; it prevents candidates from affiliating with parties for opportunistic reasons; and finally it demonstrates a candidate's loyalty and attachment to his party. While these are legitimate state objectives, it is clear that

[i]f the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties.

*Kusper v. Pontikes, supra*, 414 U.S. at 59, 94 S.Ct. at 308.

Since "precision of regulation must be the touchstone in an area so closely touching our most precious freedoms," *NAACP v. Button*, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963), the essential inquiry presented herein is whether Ohio has met this requirement of precision in enacting R.C. 3513.191. Requiring a voter to decide before casting his ballot in a party primary whether he might not more than four years in the future want to run for office as the candidate of another party would appear to be a most drastic means of accomplishing the state's goals. The objectives of prohibiting candidacies prompted by short-range goals and excluding candidates who might affiliate with a party for opportunistic reasons may be accomplished by a waiting period of significantly less than four years. These are both short-term problems which could be remedied by a waiting period similar to that approved in *Storer*. Although the third purpose—demonstration of a candidate's loyalty and attachment to his party—might justify a somewhat longer period, certainly it too could be served by some period less than the rather substantial time of four years. The state's interest in promoting party loyalty and party attachment is not in preserving the status quo within a party, but is in assuring the integrity of a party's candidate selection process. After *Storer*, candidates losing out in the internal fighting in one party may constitutionally be prevented by statute from switching immediately to another party and there seeking the lost candidacy. The requirement that a candidate may not have voted in another party's primary for a year would seem to satisfy this

---

candidate was nominated for the office mentioned in the nomination paper, registered as affiliated with a political party qualified under the provisions of Section 6430. The statement required by this subdivision shall

be omitted when no primary election was held to nominate candidate for the office to which the independent nomination paper is directed. § 6830(d), California Election Code.

objective. *Cf. Storer v. Brown, supra.* The Court understands that loyalty, though a fundamental value in political association, is not easily quantified. Still it appears that a two-year history of not voting in another's primary is as strong a guarantee of attachment as four years; and certainly it is much less burdensome.

Additionally, other less burdensome qualifications such as party membership for a reasonable period prior to the primary or participation in the party's last primary as a voter are available to the State to accomplish its goals.

The four-year restriction works an especially significant hardship on plaintiff Kay. When The American Independent Party ceased to exist under Ohio's electoral laws after the 1972 general election, Kay was left without a party route to elective office. The Ohio election laws favor the two party system. They encourage compromise within parties. People representing a broad spectrum of political opinion are encouraged to be members of one of the two dominant parties. *Cf. Storer,* 415 U.S. at 734–736, 94 S.Ct. 1274. Although Kay was free to demonstrate his loyalty to one of the existing parties by affiliating with it and, if he had chosen to, voting in its primary elections, he was frozen out of the favored route to elective office for a period of four or more years by operation of R.C. 3513.191.

On the basis of the Supreme Court's decision in *Storer* regarding candidate waiting periods, this Court is convinced that R.C. 3513.191 unconstitutionally locks plaintiff into a party which no longer has legal status in Ohio. However, a word about the effect of the Supreme Court's summary affirmance in *Lippitt* is appropriate. While it is clear that lower courts are bound by summary decisions by the Supreme Court "until such time as the Court informs [them] that [they] are not," *Hicks v. Miranda,* 422 U.S. 332, 345, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975), it is equally obvious that "they are not of the same precedential value as would be an opinion of [the Supreme] Court treating the question on the merits." *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct.

1347, 39 L.Ed.2d 662 (1974). Thus while on the one hand *Lippitt* is binding precedent, to the extent its issues have been modified by the Court's discussion in *Storer* this Court must in the end be bound by the Supreme Court's full treatment of the constitutional issues in *Storer.* See *Fusari v. Steinberg,* 419 U.S. 379, 388 n. 15, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975). With the above comments in mind, the Court makes two observations. First, *Lippitt* did not, on its facts, pass on the constitutionality of a *four year* prohibition. The plaintiff therein had voted in another party's primary just two years before his attempt to become an American Party candidate in the May 1972 primary election. The precise holding in *Lippitt* is, therefore, that Ohio could bar a prospective candidate who had two years earlier voted—and run as a candidate—in another party's primary. See *Fusari v. Steinberg,* 419 U.S. 379, 388 n. 15, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975); *cf. Storer,* 415 U.S. at 736, 94 S.Ct. 1274. A two-year waiting period has also been upheld in *Bendinger v. Ogilvie,* 335 F.Supp. 572 (N.D.Ill. 1971). Secondly, as noted above, this Court believes that the Supreme Court's discussion of the issues in *Storer* casts serious doubt upon the constitutionality of locking a candidate into a defunct political party for four years. Such an effect significantly interferes with a candidate's right to political association when the state's interests could be furthered by less drastic means.

Thus the Court holds that on the facts of this case *Lippitt* is not controlling. The Court further holds that although the State's legitimate interests support a waiting period they do not support a four-year prohibition where the prospective candidate is effectively locked into a party which no longer exists.

█ Plaintiff is not at this time entitled to summary judgment on his second claim for relief. The stipulation of facts entered into by the parties establishes, in regard to the second claim only that on April 21, 1975, the Ohio Democratic Executive Committee adopted the provision set out in n. 1, *supra.* There is, then, no basis on this record for a

finding that Mr. Kay has ever sought, or that he intends to seek, the position of delegate or alternate to the Democratic National Convention. On the present posture of this case, the Court cannot find that the "within the preceding four calendar years" provision of Rule 8(A) of the Delegate Selection Plan presents a case or controversy as between plaintiff and Messrs. Strauss and Tipps. And, since the constitutional standards applicable to officials of the State of Ohio are not necessarily identical to those applicable to a national or state political party, the Court intimates no opinion concerning the merits of plaintiff's second claim for relief.

It is accordingly ORDERED (1) that certification of this action as a class action pursuant to Rule 23(c)(1), Fed.R.Civ.P., is DENIED without prejudice; (2) that the motion to dismiss of defendants Ted W. Brown, James A. Rhodes, and William J. Brown is DENIED; and (3) that the motion for summary judgment of plaintiff Richard B. Kay is GRANTED as to the first cause of action set out in the complaint, and DENIED without prejudice as to the second cause of action.

It is ADJUDGED and DECREED that R.C. 3513.191, as applied to plaintiff Kay by defendant Ted W. Brown, is violative of plaintiff's right to associate for political purposes under the First and Fourteenth Amendments to the United States Constitution. It is ORDERED that defendant Ted W. Brown permit plaintiff's name to appear as a candidate for the United States Senate on the June 1976 Democratic primary ballot in Ohio, if aside from R.C. 3513.191 he has otherwise met the requirements of Ohio's election laws. No security is required of plaintiff.