Cuthbert J. BEHAN, III, Plaintiff,

v.

CITY OF DOVER et al., Defendants.

Civ. A. No. 75–38.

United States District Court,
D. Delaware.

Aug. 24, 1976.

Myron T. Steele and David B. Ripsom of Prickett, Ward, Burt & Sanders, Wilmington, Del., for plaintiff.

Nicholas H. Rodriguez of Schmittinger & Rodriguez, Dover, Del., for defendants.

## OPINION

STEEL, Senior District Judge:

The question before the Court is whether plaintiff, who has been deprived of his property and liberty by virtue of his dismissal as a police officer and the attendant publicity, has been denied procedural and substantive due process as guaranteed by the Fourteenth Amendment because of the alleged insufficiency of the hearings accorded to him.

Plaintiff has brought a civil action under 42 U.S.C. § 1983 against the City of Dover and, both individually and in their official capacities, against Crawford J. Carroll as Mayor of Dover, William L. Spence, as Chief of Police and Charles B. Donovan, as Chairman of the Police Advisory Board, alleging that their actions in bringing about his dismissal from the Dover City Police Department deprived him of his property and liberty without providing him the type of a hearing which constitutional due proc-

ess required.[1] Plaintiff seeks injunctive relief (including reinstatement), damages and declaratory relief against the defendants because of their responsibility for his dismissal.

■ The case is before the Court on defendants' motion for summary judgment.[2] This requires the Court to resolve all controverted relevant fact questions as well as the inferences to be drawn therefrom in plaintiff's favor, *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Suchomajcz v. Hummel Chemical Company,* 524 F.2d 19 (3d Cir. 1975); *Brandywine One Hundred Corp. v. Hartford Fire Insurance Co.,* 405 F.Supp. 147 (D.Del.1975), and the Court has done so.

■■ Jurisdiction is alleged to exist under the Civil Rights Act, 28 U.S.C. § 1343(3) and (4), by virtue of alleged violations of 42 U.S.C. § 1983 and the United States Constitution. Since plaintiff's claim of constitutional deprivation under 28 U.S.C. § 1343(4)[3] is not frivolous, the Court has jurisdiction under that section as to the individual defendants and under 28 U.S.C. § 1331 insofar as the action is against the City of Dover.[4]

Plaintiff claims that he was deprived of his due process rights under the Fourteenth Amendment in that he was deprived of property (his job) and liberty (the stigma stemming from his dismissal and the attendant publicity) without due process of law because he was dismissed without a fair and adequate either pre or post-dismissal hearing.

■ For purposes of the present motion the Court finds that plaintiff, because of his dismissal and the publicity given to it, was deprived of a liberty interest. After plaintiff's dismissal he sought employment by both the Delaware State Police and the police force in Frederica, Delaware, but neither of these agencies would even consider his application because of the adverse publicity about his dismissal in the newspaper and on the radio. Plaintiff's dismissal upon which the publicity was based deprived him of the liberty which he otherwise would have had to have an application for another law enforcement position considered without the impediment of the public notice which besmirched his record and reputation. Compare *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) with *Bishop v. Wood,* —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684, 44 U.S.L.W. 4820 (1976). But this is not enough to entitle plaintiff to relief in this Court. To be entitled to any relief the deprivation must have been the result of the lack of due process.

If the evidence considered in the light most favorable to plaintiff establishes that plaintiff was so deprived, defendants' mo-

---

1. At the argument plaintiff conceded that his claim that substantive due process had been denied him was based upon the same facts as his claimed denial of procedural due process, and that the validity of the substantive due process claim was entirely derived from and dependent on the validity of the procedural due process claim.

2. The record before the Court at this time consists of the following: a verified complaint (Doc. No. 1), an unverified answer (Doc. No. 3), plaintiff's answer to defendants' interrogatories (Doc. No. 8), defendants' answers to plaintiff's interrogatories (Doc. No. 11), plaintiff's response to a request for admission (Doc. No. 20) (the request itself was not filed with the Court) and the depositions of plaintiff (Doc. No. 18), of former patrolman David O. Sunram (Doc. No. 12), of Captain Donovan (Doc. No. 28) and of Chief Spence (Doc. No. 27).

3. Jurisdiction does not exist under 28 U.S.C. § 1343(3) since no equal protection rights are alleged or even arguably violated.

4. The City of Dover is not a person and cannot be sued under 28 U.S.C. § 1343 for violations of 42 U.S.C. § 1983. *City of Kenosha v. Bruno,* 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Samluk v. City of Wilmington,* Civil Action No. 75–139 (D.Del. March 11, 1976). However, plaintiff has alleged damages well in excess of $10,000 and consequently has a direct cause of action against the City under the Fourteenth Amendment with jurisdiction conferred by 28 U.S.C. § 1331. *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31, 44 (3d Cir. 1974); *Samluk, supra.* See also *City of Kenosha v. Bruno, supra,* 412 U.S. at 514, 93 S.Ct. 2222.

tion must be denied and a trial will be required, no counter-motion having been filed by plaintiff. At a trial the issue of whether plaintiff was deprived of a property interest, the resolution of which is not too clear at this juncture, could be decided. However, for purposes of this opinion, it will be assumed that a property interest existed of which plaintiff had been deprived, and that all defendants were responsible for whatever wrong was done to plaintiff in this aspect as well as the deprivation of liberty aspect.

The record reveals the following:

Plaintiff, then a sergeant with the Dover City Police Department, was in a patrol car with Pfc. David O. Sunram on the night shift between 11:00 p. m. and 7:00 a. m. on December 6–7, 1973. Sunram later reported to Cpl. Jerry Shepard that at plaintiff's direction he had participated in a theft by plaintiff of electrical equipment from a construction site shortly after midnight on December 7. This information came to the attention of defendants Capt. Donovan and Chief Spence on January 7, 1974.

Capt. Donovan, as second in command to Chief Spence, was then (and is now) Chairman of the Police Advisory Board "charged with investigating and advising the Chief of Police in cases involving inter-departmental corruption."[5] When Capt. Donovan learned of the theft on January 7, he convened the Advisory Board and directed Capt. Joseph Klenoski to investigate the rumors and to report back in writing. Klenoski's report, dated January 11, 1974, indicated that a theft had been perpetrated by plaintiff while on duty.

[*] On January 11, Chief Spence suspended plaintiff without a hearing pending the outcome of the investigation.[6] Chief Spence gave plaintiff a letter to that effect during their meeting that afternoon. Spence also advised plaintiff to contact his attorney which he did then or shortly thereafter.[7]

On January 16, 1974, five days after plaintiff's suspension, a hearing was held before the Advisory Board. The Board consisted of Capt. Donovan, Lt. Michael Stacheki (appointed by the Mayor) and Sgt. Ralph C. Jones (appointed by the Chief of Police). The purpose of the hearing was to investigate alleged violations of the rules and regulations of the department and to make findings and recommendations which would be a basis for possible disciplinary action by the Chief of Police. What took place at the hearing is discussed later. At this point it is sufficient to note that plaintiff appeared at the hearing with his attorney, Steele, and "admitted taking the articles in question."[8] Plaintiff not only admitted his guilt to the Board, "he related what had happened" and confirmed Sunram's statement of the incident which revealed the details of the theft by plaintiff. Had plaintiff failed to appear he was subject to dismissal under the regulations.[9]

Following the hearing and on the same day that it was held, the Advisory Board sent to Chief Spence its "Finding and Recommendation" stating that plaintiff had violated certain department rules and regulations, viz.:

1. Chapter III, Section I.1.1 Standards of conduct;

---

5. General Order from Chief Spence, September 24, 1971 (establishing the Advisory Board).

6. Plaintiff does not complain of the suspension. The presence of a suspected thief on the police department would seem to pose "a continuing danger to persons or property" so as to justify a short suspension without prior notice or hearing. *Goss v. Lopez*, 419 U.S. 565, 582–584, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975).

7. Spence deposition at 12–13.

8. Advisory Board Minutes, attached to Defendants' Answer to Plaintiff's Interrogatories. These Minutes constituted the "official notes" of the Board. Donovan deposition at 8; Spence deposition at 21. They are the records of a public office or agency, the Advisory Board, and resulted from an investigation made pursuant to authority granted by law. Consequently the minutes are admissible under F.R.E. Rule 803(8)(C) to prove the facts stated in them.

9. Behan deposition at 46–47.

2. Chapter III, Section III.3.14 Department Vehicles Use of;
3. Chapter III, Section I.1.11 Obedience to Laws and Regulations.[10]

and recommended that plaintiff "be dismissed from the City of Dover Police Department effective this date." Chief Spence received the "Finding and Recommendation" letter and the Advisory Board minutes. He had previously received Capt. Klenoski's Investigation Report. After a brief discussion with Capt. Donovan "to clarify the letter", Chief Spence, without any further hearing or any discussion with plaintiff, decided to dismiss plaintiff from the force and sent him a letter informing him of his dismissal "effective today, January 16, 1974."

On January 16, Capt. Spence also prepared and authorized a news release which stated that plaintiff had been dismissed from the police force. The release plainly inferred that the dismissal was the result of an Advisory Board finding that plaintiff had committed a robbery. The contents of the news release were publicized by radio and newspaper, resulting in plaintiff being denied consideration for employment by the police departments of the State of Delaware and the City of Frederica.

After his dismissal plaintiff was entitled to two further hearings—one before the Mayor and following that, one before the Dover City Council.[11] Plaintiff appealed the dismissal by the Police Chief to Mayor Carroll and on January 29, appeared before the Mayor with his attorney, Steele. Steele explained to the Mayor that he was appealing the decision of the Chief of Police because he felt that the Board had acted in violation of the plaintiff's rights, not because plaintiff was innocent or that his admission was coerced or not voluntarily given. Plaintiff did not testify nor make any statements before Mayor Carroll. Plaintiff was sure that if he had any witnesses to present to the Mayor he could

have done so but acknowledged that he had no witnesses that he wanted to present. (Behan deposition 33–34). In a letter to plaintiff's attorney dated February 4, the Mayor announced his decision to affirm plaintiff's dismissal from service.

An appeal was then taken by plaintiff to the City Council which convened on March 11. Acting upon advice from Steele, plaintiff did not appear before the Council. Steele did appear and presented a letter dated March 11 to the Council which did not question plaintiff's guilt or the validity of his admission of it, but simply asserted that plaintiff had been deprived of his property rights without due process of law. Steele was aware that witnesses could be heard and cross-examined at the hearing for this procedure was followed in the case of another alleged offender whom Steele represented before the Council at the same hearing. However, no witnesses were presented on plaintiff's behalf. The Council deferred its decision until a private session could be held where plaintiff's case, among others, could be discussed and a decision reached. On April 8, 1974, Council unanimously voted to uphold the decision of Mayor Carroll.

■ Plaintiff's primary contention that he was denied due process is directed against the proceedings before the Advisory Board. The Advisory Board's function was only to investigate and make recommendations as to what charges, if any, should be brought against plaintiff; it was not empowered to take disciplinary action against him. It was not necessary, therefore, that the Board use the procedures which tradionally have been associated with judicial process in connection with adjudications or the making of binding determinations affecting legal rights. *Hannah v. Larche,* 363 U.S. 420, 441–443, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); *Haines v. Askew,* 368 F.Supp. 369 (M.D.Fla.1973) (three judge court), *aff'd* 417 U.S. 901, 94 S.Ct. 2596, 41 L.Ed.2d 208 (1974).

---

**10.** None of the rules or regulations were made a part of the record and their exact terms are not known.

**11.** Departmental Manual of Rules and Regulations, Chapter ——, Section IX.9.3, Exhibits "C" and "I" to Defendants' Opening Brief.

But to the extent that plaintiff was entitled to some of the principal rights which adjudicatory hearings frequently require none were denied him which prejudiced his rights to any degree. It is true that plaintiff was given no written notice of the matter to be investigated. But there can be no doubt that plaintiff knew in a general and sufficient way that the purpose of the hearing was to investigate plaintiff's connection with the burglary. His attorney, Steele, had met with Chief Spence on several dates between January 11 and January 16, to discuss the incident in general terms. When Capt. Donovan notified plaintiff by telephone and also by letter on January 13, that a hearing would take place on January 16, although no specific incident was mentioned, plaintiff knew that the hearing concerned his general involvement in the burglary. He was also familiar with the general order of the department dated September 24, 1971, which created the Advisory Board, and knew that the purpose of a Board hearing was to investigate corruption within the department. Viewing the evidence in the light most favorable to plaintiff the inference is clear that plaintiff had sufficient knowledge of the purpose of the hearing to enable him to prepare adequately for it.

Again, it is true that the Board denied plaintiff and his attorney the right to be present when the other witnesses testified, and as a consequence plaintiff had no opportunity to cross-examine them. Nor was plaintiff advised of the nature of their testimony. The denial of these opportunities prejudiced plaintiff in no significant way in view of the fact that when he went before the Board he admitted that he had been guilty of a theft. Although plaintiff was given no opportunity by the Board to call witnesses on his own behalf, he admitted that he had no witnesses that he wanted to call.[12]

After Chief Spence had dismissed the plaintiff upon the basis of the Investigation Report of Capt. Klenoski and the Finding and Recommendation of the Advisory Board, the plaintiff had an opportunity both before the Mayor and the City Council to retract his admission, with or without an explanation for it, and to deny his involvement in the theft. He attempted to do neither. Nor did he attempt to do so in the present case.

■ Due process, unlike some legal rules, is not a technical concept with a fixed content unrelated to time, place and circumstances. The interpretation and application of the due process clause are intensely practical matters and the very nature of the process negates any concept of inflexible procedure universally applicable to every imaginable situation. *Cafeteria & Restaurant Workers, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The formality and procedural requisites for a due process hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings. *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Procedural due process rules are shaped by the risk of error inherent in the truth finding process as applied to the generality of cases, not the rare exception. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (February 24, 1976). The judicial model of an evidentiary hearing, is neither a required, nor even the most effective, method of decision making in all circumstances. *Id.* at 343–344, 96 S.Ct. 907.

*Mattern v. Weinberger*, 519 F.2d 150 (3d Cir. 1975), recognized these principles and stated that the requirements of due process were not to be uniformly applied to all proceedings, but varied from case to case depending upon the circumstances. There the Court held that under the circumstances before it, plaintiff had been deprived of due process because the Social Security Act failed to provide plaintiff with an oral hearing before there could be an agency determination to reduce future payments to plaintiff in order to recoup prior overpayments which had been made to him. Sig-

---

**12.** Behan deposition at 34.

nificantly, however, the Court said at p. 167:

"We do not believe that due process requires pre-recoupment oral hearings in all cases but the Secretary's existing procedure makes no distinction between the various types of cases and issues that are likely to arise."

The Court then pointed out that in some cases issues relevant to a recoupment determination necessitated a valuation of disputed evidence and that in others the resolution of the recoupment issues could be determined on the basis of documents. The Court stated that in the former class of cases a prerecoupment oral hearing was required whereas in cases of the latter type a recoupment determination justifying immediate deductions could be made on the basis of documents without an oral hearing.

■ In *Mathews v. Eldridge, supra,* at 333, 96 S.Ct. at 902, the Court stated that "some form of hearing is required before an individual is finally deprived of a property interest." The same thing is true before a person can be deprived of his liberty interest where his good name, reputation, honor or integrity is at stake. See *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). What form of hearing he is entitled to, and when, is always the question.

Although *Mathews v. Eldridge* involved the constitutionality of agency procedures prior to a determination to withhold social security payments and the instant one is concerned with predismissal procedures, the test laid down in *Mathews v. Eldridge* is equally applicable. There the Court held that whether an individual had been deprived of his due process rights required a balancing of three factors:

"[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens

that the additional or substitute procedural requirement would entail."

■ Application of the principles of *Mathews* and *Mattern* to the unique circumstances of this case compels this Court's conclusion that plaintiff received the process which was due in connection with his dismissal. For even if one assumes that a weighing of the factors enumerated in *Mathews* would have entitled plaintiff to a predismissal hearing had he denied any misconduct, the fact of his admission drastically altered the balance among those factors. The risk of error, though of overriding concern where an employee disputes the charges against him, shrinks to insignificance when the employee has knowingly admitted his wrongdoing.

In the instant case plaintiff's admission before the Advisory Board substantially undermined the foundation upon which his right to a hearing would otherwise have rested. Plaintiff was aware that he was accused of committing a burglary while on duty and admitted his participation before the Advisory Board which was investigating these charges. The possibility of error in such circumstances was slight and did not necessitate a hearing before the Chief of Police prior to his dismissal.

■ Furthermore, as to the possibility, however slight, that the discharge was unwarranted, plaintiff had ample opportunity to secure redress in his appeals to the Mayor and City Council. The promptness and adequacy of administrative review is a significant factor in assessing the sufficiency of the entire process. *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975). Review here was certainly prompt, and plaintiff had ample opportunity on appeal to retract his admission and/or deny his guilt, or at least to explain his conduct and place it in the most favorable context. He did not do so before the Mayor or City Council, limiting his appeal to procedural due process grounds, nor has he done so in this action. The post-dismissal review procedures, under the circumstances of this case, met all constitutional due process requirements.

Because *Anapol v. The University of Delaware,* 412 F.Supp. 675 (D.Del.1976), was decided by this Court and is emphasized by plaintiff, a brief discussion is warranted. *Anapol* held that a tenured professor at the University of Delaware was unconstitutionally denied a property interest when his employment was terminated for cause without a pretermination hearing which satisfied constitutional standards.[13] Prior to his termination the professor had admitted the forgery of a letter which had come to light in connection with other documents submitted for his evaluation as a promotion candidate. The Court found that despite the professor's denial of any other impropriety, more than just the forged letter had entered into the Dean's decision to terminate him, and plaintiff should have been given an opportunity to prepare a response to the allegations which he denied. The Court then said, clearly by way of *obiter dicta,* that even if the confessed forgery had been the sole basis for the professor's termination "it would seem that he would nevertheless have been entitled to a fair opportunity to put it in as favorable context as he could". In the instant case plaintiff had such an opportunity at the hearing before the Advisory Board, yet neither at that hearing nor in his post-dismissal appeals was any attempt made to place plaintiff's conduct in a more favorable light.

Plaintiff was denied neither procedural nor substantive due process by either pre or post-dismissal procedures. Defendants' motion for summary judgment will be granted.

---

**13.** It is not clear from the opinion whether a constitutionally valid post-termination hearing was available. The Court's reference to *Skehan v. Board of Trustees,* 501 F.2d 31 (3d Cir. 1974) indicates that it deemed post-termination hearings to be insufficient for constitutional purposes.