**Beda KENDALL, on behalf of herself and all others similarly situated**

v.

**William E. BROCK, Secretary of Department of Labor in his official capacity.**

**Civ. A. No. 85–195.**

United States District Court, D. Vermont.

April 10, 1987.

Opinion on Declaratory Relief Dec. 22, 1987.

Judgment Order Dec. 22, 1987.

Amended Judgment Order Feb. 11, 1988.

James C. May, South Royalton Legal Clinic, South Royalton, Vt., for plaintiff.

John–Claude Charbonneau, Asst. U.S. Atty., Rutland, Vt., for defendant.

## MEMORANDUM OF DECISION

HOLDEN, Senior District Judge.

In this class action, plaintiff Beda Kendall challenges the procedures used by defendant, the Secretary of Labor, to terminate or reduce benefits under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101–8193 (FECA). The claimant Kendall instituted this action in federal district court, seeking declaratory and injunctive relief to redress her complaint that the termination of her employee benefits, without pretermination notice or an opportunity

to respond, violated due process under the Fifth Amendment.

The substantive and procedural facts are established by the Opinion and Order of Honorable Albert W. Coffrin, chief judge of this court, granting preliminary injunctive relief on the application of the plaintiff. *Kendall v. Brock,* No. 85–195 (D.Vt., Sept. 27, 1985).[1] A brief review of the background of the controversy seems appropriate to consideration of the opposing motions for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure that are now before the present court.

Beda Kendall sustained a back injury in July, 1979, while employed by the federal government as a food service worker at the United States Veterans Administration Hospital in White River Junction, Vermont. Mrs. Kendall filed a timely notice of injury and claim for compensation under FECA. The Act establishes a comprehensive system to provide workers' compensation benefits to federal employees. The claimant received "continuation of pay" for the statutory maximum of 45 days, pursuant to 5 U.S.C. § 8118. In July, 1980, the Office of Workers Compensation Programs (OWCP), the agency that administers claims for benefits under FECA, awarded plaintiff continuing benefits under the Act. Such compensation is paid periodically from the time the agency determines that the claimant's work loss has continued, or is anticipated to continue for 60 days or more.

The OWCP notified the claimant in December, 1980, that her compensation would be reduced for the reason that she was not totally disabled. Following a hearing, an OWCP representative issued a decision in January, 1982, that determined plaintiff was totally disabled. However, the hearing officer noted that the medical evidence failed to establish that plaintiff's disability was causally related to her work. An investigation of that issue was ordered which included various medical examinations by

1. The parties have accepted the findings contained in Judge Coffrin's opinion as established. The court therein, Opinion and Order at 2, observed that the OWCP notified Kendall in December, 1981 that her benefits would be reduced. For the sake of clarity, the court notes that the OWCP's decision to reduce plaintiff's benefits apparently occurred in December of 1980. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction, August 29, 1985, Exhibit 1, "Decision of the Hearing Representative," at 1.

physicians designated by the government. The claimant submitted to medical examinations in July, 1982, and again in January and December, 1984. The facts, earlier found by the court, establish that the claimant was not notified of the results of the examinations.[2]

On June 10, 1985, OWCP terminated claimant's FECA benefits, effective forthwith. Under termination procedures then in effect, Kendall's benefits were terminated without formal pretermination notice or an opportunity to respond.[3]

Later, in July, 1985, the claimant filed an administrative appeal of the decision terminating her benefits. A hearing was held on August 21, 1985, at which time plaintiff was granted additional time to submit further medical evidence.

In the interim, and before the Secretary rendered a decision on plaintiff's administrative appeal, the plaintiff instituted this action on August 1, 1985. On August 13, 1985, plaintiff moved for a preliminary injunction, directing the Secretary to reinstate plaintiff's benefits until she received notice and an opportunity to respond.

On September 27, 1985, the court granted plaintiff's request for preliminary injunctive relief, ordering the Secretary to reinstate Kendall's benefits pending a new determination of her eligibility.[4] In keeping with the court's order, the Secretary reinstated Kendall's benefits, notified plaintiff that her benefits were subject to termination, and gave her 30 days to submit evidence in support of her claim. Following the submission of additional evidence by Kendall, the Secretary terminated plaintiff's benefits.[5] An administrative appeal of the termination is pending.

On August 14, 1986, Judge Coffrin granted the plaintiff's motion for certification of the cause as a class action under Rule 23, Fed.R.Civ.P. The court defined the class to be comprised of current and future Vermont recipients of FECA benefits who are at risk of having those benefits terminated or reduced.[6]

---

2. The Secretary has argued that the plaintiff could have obtained copies of the results of the medical examinations conducted by physicians selected by the government, citing 20 C.F.R. § 10.11. However, as Judge Coffrin's opinion previously noted, the regulation cited provides that the Secretary has the discretion to deny a request for examination of records.

3. The government points out that, in February of 1984 and 1985, Kendall received actual notice that her claim was under periodic review by OWCP, with direction for her to submit medical evidence in support of her claim.

4. As noted in the text, Kendall was initially notified on June 10, 1985, that her benefits were being terminated. On August 21, 1985, she attended a hearing during which she had the opportunity to present evidence in support of her claim. In the order dated September 27, 1985, granting preliminary injunctive relief, Judge Coffrin emphasized that, although Kendall had by that time already received the procedural protections she sought, the essence of her claim was her demand that the procedures be afforded prior to termination of her benefits. The court ordered the Secretary to reinstate Kendall's benefits pending a new determination of her eligibility. The Secretary's appeal from this order for preliminary injunctive relief was withdrawn by stipulation.

5. On December 18, 1985, the plaintiff filed a motion for a second preliminary injunction, arguing that the Secretary had failed to provide plaintiff with a post-termination hearing pursuant to 5 U.S.C. § 8124(b)(1). After the Government voluntarily agreed to provide the hearing, the court determined that plaintiff's motion was moot.

6. The class is defined as:
   All residents of Vermont who are at present, or who at any time in the future may be, recipients of any of the following types of benefits payable under the Federal Employees' Compensation Act, and who are at risk of having those benefits terminated or reduced on any basis other than the receipt by the Office of Workers' Compensation Programs of substantial evidence of death, return to work, an individual's reaching a particular age, the conclusion of a pre-determined schedule award period, or the existence of a statutory bar under 5 U.S.C. §§ 8106(b), 8106(c)(ii) [sic], 8116(b), or 8131–8132:
   wage loss compensation (received or expected to be received, for 60 days or more)
   medical benefits (where the service at issue has been received, or can be expected to be received, for 60 days or more, and where the termination or reduction is initiated by the Office of Workers' Compensation Programs)
   attendant allowances
   augmented compensation
   survivors' benefits
   schedule award (where the termination or reduction occurs before the scheduled period has run out).

Class certification was followed by the plaintiff's motion for summary judgment, seeking declaratory relief in behalf of the class she represents, that the method for terminating and reducing FECA benefits violates due process. A mandate is sought to compel the Secretary to adopt and implement procedures to afford notice and an opportunity to respond prior to termination or reduction of class-wide benefits.[7] On October 6, 1986, the Secretary moved for summary judgment dismissing the action.

The Secretary renews his contention that the court is without jurisdiction over the subject matter of this action. The Secretary contends that the promulgation in September, 1986, of FECA Bulletin 86–85, establishing new procedures for the termination and reduction of benefits, provides the relief sought by plaintiff and requires dismissal of the complaint for reasons of mootness.

The plaintiff has responded by asserting that while Bulletin 86–85 provides some of the procedural protections sought in the complaint, it violates due process in other respects which offend the interests of the class she represents.

After submission of extensive written briefs and oral argument, the case is now advanced for decision on the opposing motions for summary judgment.

## Discussion

### I. Subject Matter Jurisdiction

■ The court turns first to the Secretary's renewed challenge to subject matter jurisdiction. The Secretary argues that 5 U.S.C. § 8128(b) precludes judicial review of the procedures used by the Secretary in determining claims for benefits under FECA.

The statute provides in relevant part: The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and

> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).

The September, 1985 opinion by Judge Coffrin, granting preliminary injunctive relief, held that § 8128(b) does not bar judicial review of constitutional challenges to the procedures used by the Secretary in determining claims for benefits under FECA. The Secretary, nonetheless, renews the question of subject matter jurisdiction, relying on the Supreme Court's recent decision in *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985).

In *Lindahl* the Court considered whether the provisions of 5 U.S.C. § 8347(c), as amended in 1980, foreclosed judicial review of Merit System Protection Board (MSPB) disability retirement decisions of the Office of Personnel Management under the Civil Service Retirement Act. Section 8347(c) provides that, with certain exceptions, decisions of the office on questions of disability and dependency are "... final and conclusive and are not subject to review."

The Court held that while § 8347(c) precludes review of factual determinations by the MSPB, it does not bar judicial review of

---

*Kendall v. Brock,* Civ. 85–195, Order, August 14, 1986 (Coffrin, J.).
As the plaintiff indicated in her Memorandum in Opposition to Defendant's Motion for Summary Judgment, the reference to section "8106(c)(ii)" in the class certification order cited above should have read "8106(c)(2)."

7. Kendall challenges the termination and reduction procedures only as they relate to those types of "continuing" benefits listed in the definition of the plaintiff class. *See supra* note 6. Plaintiff does not challenge the Secretary's procedures for termination or reduction of other types of "continuing" benefits under FECA,

namely, Civil Service retention rights provided by 5 U.S.C. § 8151, continuation of pay under 5 U.S.C. § 8118, and rehabilitation services under 5 U.S.C. § 8104. Similarly, plaintiff does not challenge the Secretary's procedures for termination or reduction of benefits which constitute "one-time payments," such as burial expenses and transportation of body expenses under 5 U.S.C. § 8134, termination costs under 5 U.S.C. § 8133(f), and lump sum payments under 5 U.S.C. §§ 8135(a) and 8135(b). *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment.

claimed errors of law and procedure. In reaching this conclusion, the Court contrasted the general language of § 8347(c) with the specific language of two statutes: the FECA provision, 5 U.S.C. § 8128(b), and a comparable enactment concerning veterans' benefits, 38 U.S.C. § 211(a). The Court referred to 5 U.S.C. § 8128(b) and 38 U.S.C. § 211(a) as examples of "unambiguous" language evincing Congress' intent "to bar judicial review altogether." 470 U.S. at 779–780 and n. 13, 105 S.Ct. at 1627 and n. 13.

The Secretary argues footnote 13 in *Lindahl* establishes that § 8128(b) is a jurisdictional bar to the court's consideration of the constitutional issues raised in this action. To the contrary, the Court has expressly held that 38 U.S.C. § 211(a) does *not* preclude review of constitutional challenges. *See Johnson v. Robison*, 415 U.S. 361, 373–374, 94 S.Ct. 1160, 1168–1169, 39 L.Ed.2d 389 (1974). *See also Bartlett v. Bowen*, 816 F.2d 695 (D.C.Cir.1987) (digest of opinion) (statute, if read to bar judicial review of constitutional challenges, would unconstitutionally infringe upon due process). Judge Coffrin concluded earlier in this action that the reasoning of *Johnson* "is directly applicable to section 8128." *Kendall v. Brock, supra*, No. 85–195, at 16.

Of course, the denial of benefits to the claimant, Beda Kendall, is not the question here. That decision is undergoing administrative review, awaiting final action by the Secretary. The question presented in the pending motions is the validity, in terms of due process, of the procedure which underlies the decision of the Secretary to terminate wage loss compensation. In this context the court's jurisdiction to decide the questions at hand is not foreclosed. *See Rodrigues v. Donovan*, 769 F.2d 1344, 1348 (9th Cir.1985) (holding that § 8128(b) did not deprive court of subject matter jurisdiction in action by a federal employee challenging on constitutional grounds, termination of worker's compensation benefits).

The defendant has not shown any valid reason to depart from the court's earlier decisions on the jurisdictional issue in *Kendall v. Brock, supra*, and *Kendall v. Donovan*, No. 80–326 (D.Vt. June 24, 1981).

## II. Terminating Procedures

The challenge to the sufficiency of the process provided to the class that the plaintiff represents is met by the defendant's contention that prior procedural shortages have been cured by FECA Bulletin 86–85, which we refer to as the Bulletin. The administrative procedures prescribed in this document were promulgated in an effort to resolve this class action. It is the Secretary's position that the Bulletin drains the case of controversy, leaving nothing for adjudication, citing *Avery v. Secretary of HHS*, 797 F.2d 19 (1st Cir.1986).

The parties acknowledge that the defendant has complied with the preliminary injunction entered by the court in September, 1985. They further agree that the claimant's benefits were terminated by the Secretary in accord with procedural steps that were requested by the plaintiff. The merit of the termination is now the subject of an administrative appeal. Even though the particular circumstances that gave rise to the plaintiff Kendall's complaint are no longer in controversy, the deficiencies complained of will undoubtedly be repeated against the members of the class she represents. The class action remains alive. *See, e.g., Sosna v. Iowa*, 419 U.S. 393, 401, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975).

The pending motions focus on two principal questions. The first of these is referred to as the *multiple notice issue*. It centers on the defendant's failure to further notify the claimant before termination of the report of a third physician appointed by the Secretary, pursuant to 5 U.S.C. § 8123, to resolve the disagreement between the worker's physician and the medical officer of the United States.[8]

---

8. 5 U.S.C. § 8123 provides:

   **§ 8123. Physical examinations**

   (a) An employee shall submit to examination by a medical officer of the United States, or by a physician designated or approved by

The second question is designated the *attending physician issue.* The procedures now in effect permit the OWCP to terminate or reduce an employee's benefits on the basis of information submitted by a physician selected by the claimant to treat his job-related injury. In this situation the procedure permits the agency to terminate the claimant's benefits without notice.

The Secretary maintains he is entitled to judgment as a matter of law on the strength of the procedure now in place under the Bulletin. The plaintiff, with equivalent vigor, complains that the procedure prescribed by the Secretary fails to comply with essential requisites of due process.[9]

### Multiple Pretermination Notice

The first step in the procedures promulgated by the Secretary provides that a claimant, whose benefits are under consideration for reduction or termination, is notified of the proposed action by letter. He is informed that he has the right to submit evidence and argument against the proposed action within thirty days from the date of the communication. Bulletin, ¶ 2 at 4.

The Bulletin was prepared and issued by the OWCP through the Associate Director, the officer in the Department of Labor charged with responsibility for administering the Compensation Act. It has an effective date of September 26, 1986; the expiration date is September 26, 1987. The procedures provide that when the Claims Examiner assigned to the case concludes that the record of the claimant's work-related injury established that the compensation for disability should be ended or reduced, the Examiner submits a memorandum to this effect to the Director.

The writing is designed to set forth the reasons for the Examiner's recommendation for termination or reduction in disability compensation. The Bulletin further specified that the Examiner's report include a recommendation that the claimant be notified of the proposed action. The full record, with the memorandum, is forwarded to the Superior Claims Examiner for review. In the event the supervisor does not adopt the recommendation, the record is returned to the Claims Examiner with direction for further action.

If the supervisor is persuaded that the record and memorandum support the recommendations, the claimant is then notified by letter of the proposed action. The notice includes a copy of the memorandum stating the reasons for the proposed action, with a copy of the medical report which forms the basis for reduction or termination of the current compensation.

The claimant is informed that he has thirty days to submit evidence and argument relevant to the proposed action. Where termination is indicated, the claim-

---

the Secretary of Labor, after the injury and as frequently and at the times and places as may be reasonably required. The employee may have a physician designated and paid by him present to participate in the examination. If there is disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary shall appoint a third physician who shall make an examination.

(b) An employee is entitled to be paid expenses incident to an examination required by the Secretary which in the opinion of the Secretary are necessary and reasonable, including transportation and loss of wages incurred in order to be examined. The expenses, when authorized or approved by the Secretary, are paid from the Employees' Compensation Fund.

(c) The Secretary shall fix the fees for examinations held under this section by physicians not employed by or under contract to the United States to furnish medical services to employees. The fees, when authorized or approved by the Secretary, are paid from the Employees' Compensation Fund.

(d) If an employee refuses to submit to or obstructs an examination, his right to compensation under this subchapter is suspended until the refusal or obstruction stops. Compensation is not payable while a refusal or obstruction continues, and the period of the refusal or obstruction is deducted from the period for which compensation is payable to the employee.

9. Plaintiff emphasizes that the agency relies heavily upon the opinions of impartial specialists, citing two decisions by the Employees' Compensation Appeal Board giving great deference to specialists' opinions. *William J. Knight, Jr.,* 35 ECAB 650, 657 (1984); *Mildred Kaye,* 35 ECAB 952, 957 (1984).

ant is advised to contact the Office of Personnel Management concerning job restoration rights. If the claimant does not respond within thirty days, a second memorandum is submitted by the Claims Examiner to the Supervisor, recommending termination with a proposed order to accomplish that result.

Apparently, in keeping with 5 U.S.C. § 8123, the Bulletin provides that when the claimant's response creates a conflict in the total medical record, the opposing medical opinions require a referral to an impartial medical specialist. The procedures further specify that, where such reference is made, the claimant should be advised:

(1) the reason for the referral (i.e., that the evidence submitted by the claimant resulted in a conflict of medical opinion requiring resolution by an impartial medical specialist), and (2) that the results of this referral will not result in a second notice of proposed action and may result in immediate termination (or reduction) of compensation, and (3) that the claimant should submit any further evidence or argument deemed appropriate within 30 days. Bulletin ¶ 5 at 6.

The administrative design calls on the specialist to undertake the resolution of the conflict and issue a report. His report is reviewed by the OWCP Claims Examiner. OWCP renders a decision based on the report. To resolve the conflicting medical evidence, the impartial specialist may conduct a physical examination of the claimant when required by the Secretary. The statutory provision, authorizing the examination by a third physician, further provides that the employee may have a physician, designated and paid by the claimant, present to participate in the examination. 5 U.S.C. § 8123(a).

In the event that the OWCP decides to terminate or reduce benefits based on the impartial specialist's report, there is no requirement that the OWCP provide further notice before ordering termination or reduction. Thus, although a claimant learns of the referral to the specialist and at that time may submit additional evidence and argument, the claimant is not afforded the opportunity to respond to the specialist's resolution of the conflicting medical evidence.

The administrative process is not necessarily concluded by the termination or reduction ordered by the OWCP. A claimant aggrieved by the decision is afforded a thirty day period to request and receive an evidentiary hearing in further support of his claim. Within thirty days from the hearing the Secretary is required to notify the claimant of his further decision for or against the award. 5 U.S.C. § 8124. A claimant may obtain review of the final decision of the OWCP by appeal to the Employment Compensation Review Board, as provided in 5 U.S.C. § 8128.

It is settled in the record that the FECA benefits constitute a private property interest that is protected by the due process clause. The parties are agreed on this point. The court has so held in its earlier grant of preliminary injunctive relief. *Kendall v. Brock*, No. 85–195.

The guide to the measure of due process is *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

In stating the principle that "some form of hearing is required before an individual is finally deprived of a property interest," the Court explained that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time in a meaningful manner.' *Armstrong v. Manzo*, 380 U.S. 545, 552 [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] (1965)," *id.* at 333, 96 S.Ct. at 902.

More recently, in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), in determining what procedures are required prior to dismissal of a public employee, the Court reiterated that the "essential requirements of due process" are notice and an opportunity to respond. 470 U.S. at 546, 105 S.Ct. at 1495.

In the context of the present record, the private interest at stake is the claimant's entitlement to an uninterrupted flow of benefits during the second phase of the termination process. The procedure advanced by the plaintiff would interdict the agency decision until the claimant is informed of the impartial medical referee's report, together with the factual and legal bases for any adverse decision the agency proposes to render. In the interim the claimant's benefits would continue for the time required to afford the claimant the opportunity to respond to the referee's report with additional evidence and argument.

In *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975), we are reminded:

> ... the possible length of wrongful deprivation of ... benefits is an important factor in assessing the impact of official action on the private interest.

The delay involved in the challenged procedure between the impartial specialist's medical report and the agency decision is minimal.

The second factor in the *Mathews* analysis involves the risk of erroneous deprivation of the property interest as a result of the current procedures and the probable value of additional or substituted procedural safeguards. The focal point in the evaluation of the administrative process is the purpose of the proceedings. *Mathews v. Eldridge, supra,* 424 U.S. at 343, 96 S.Ct. at 907; *Basciano v. Herkimer,* 605 F.2d 605, 610 (2d Cir.1978); Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267, 1281 (1975). The purpose of the proceedings in question is to determine the nature and extent of the worker's disability.

The claimant's entitlement in the initial award and the right to continuing benefits present issues that are primarily medical. The Court recognized in *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the probative value of medical reports by physician specialists who have personally examined the subject. Professional disagreement generated in medical conclusions does not enhance the risk of error, nor impair the truth finding process in the general run of cases. *Mathews v. Eldridge, supra,* 424 U.S. at 344, 96 S.Ct. at 907.

Where the record develops a conflict in the medical reports, as noted earlier, 5 U.S.C. § 8123 authorizes reference to an impartial medical specialist. The Act contemplates that the "employee may have a physician designated and paid by him present to participate in the examination."

The regulatory scheme is designed to avail the agency of an additional report of an impartial medical specialist to resolve the conflict that has developed on the question of whether benefits should terminate or continue. To interrupt the decisional process by a second notice to afford further medical evidence and adversative argument is not in keeping with the objectivity sought to be achieved. If error resides in the decision that follows, it is subject to correction on motion for reconsideration or by appellate review. 5 U.S.C. § 8124(b); 20 C.F.R. §§ 10.131–137. Where it appears the termination was incorrectly ordered, the loss is subject to retrieval by way of retroactive payments. 5 U.S.C. § 8129.

Furthermore, under Bulletin 86–85 claimants are notified of the fact of referral to an impartial specialist and are informed that the record contains conflicting medical evidence. Since claimants are given an opportunity at that point in time to submit additional evidence and argument, they have the occasion to contribute to the proper resolution of the disagreement.

The reliability and probative worth of medical reports, as noted earlier, is recognized in *Mathews v. Eldridge, supra,* 424 U.S. at 344, 96 S.Ct. at 907 (citing *Richardson v. Perales, supra,* 402 U.S. at 405, 91

S.Ct. at 1429). The impartial medical report, coupled with the claimant's opportunity to submit additional evidence upon learning of the referral, provide reasonable protection to the truth finding function. The probable value of affording further opportunity for FECA claimants to respond prior to termination is insubstantial. *See Basciano v. Herkimer, supra.*[10]

The third factor to be considered is the government interest at stake. Implementation of the procedure to provide for a second pretermination notice and hearing after the impartial medical report has been received would introduce an additional phase into the decisional process.

Promptness in administrative action is also a factor in assessing the sufficiency of the entire process. *See Fusari v. Steinberg, supra,* 419 U.S. at 389, 95 S.Ct. at 539. The delay involved in this instance would require the OWCP to continue payments to all claimants whose disabilities have been referred, after the impartial referee had determined that the claimants' impairments had ended. The fiscal impact could be severe.

■ The court concludes on the present factual record that due process does not require that FECA claimants receive a second pretermination notice following the report of the designated impartial specialist. Accordingly, the defendant is entitled to declaratory relief to this effect. Partial summary judgment will be entered accordingly.

## The "Attending Physician" Issue

■ The second major point of contention concerns defendant's excluding from pretermination notice and related procedures those claimants whose compensation benefits are terminated or reduced based upon

a reasoned medical report, submitted by the physician selected by the claimant to provide treatment for the job-related injury, stating that the claimant has recovered from that injury and that the physician has released the claimant from further treatment and/or for return to work.

Bulletin at 2. Under the Act claimants have the right to select their own physicians for the treatment of work-related injuries. 5 U.S.C. § 8103. The Bulletin further specified that a physician is considered to be "selected by the claimant" if "the physician is caring for the claimant on a regular basis by the claimant's own choice, whether the claimant sought treatment directly or was referred by a previously selected physician." Bulletin at 2. The parties have referred to such doctors as "attending physicians."

---

10. The Second Circuit has discussed the requirements of due process in an analogous case involving an agency's reliance on medical reports, *Basciano v. Herkimer,* 605 F.2d 605 (2d Cir. 1978), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979). In *Basciano,* a former city employee challenged the procedures for determining eligibility for accident disability retirement benefits under the city's Employees' Retirement System. Under the System, after an applicant submitted medical evidence in support of his application, the agency's Medical Board conducted an examination, the results of which were presented in a report to the System's Trustees. After the Trustees rendered a decision, an applicant was given an opportunity to review the evidence relied on by the Trustees and to request reconsideration.

The court rejected the plaintiff's argument that due process required that he be given an opportunity to respond at a hearing to the Board's report prior to the initial decision by the Trustees. The court emphasized that the Medical Board's responsibility in examining the applicant was "to make a medical judgment, not to function as adversaries or advocates." 605 F.2d at 610. Further noting that "Basciano himself provided all the evidence relied on by the Board (other than its own examination) and had the right, which he exercised, to present further responsive evidence on an application for reconsideration," *id.* at 611, the court concluded that Basciano had received all the process he was due.

Although the court focused on the plaintiff's request for an oral hearing, the court held that the System's procedures, which did not provide an opportunity to respond to the Board's findings either in writing or orally prior to the Trustees' decision, satisfied due process.

While *Basciano* involved a determination of initial eligibility for disability benefits rather than termination of benefits, the Second Circuit's analysis of the procedures required following examination by the Medical Board is relevant to the issue presented in this case.

The published exception for "attending physicians" does not apply, however, if a claimant is treated by more than one doctor. In the event the OWCP or the claimant's employer participated in selecting the physician, the exception does not apply. Further, the exception does not apply if the claimant's case file contains any medical evidence indicating that the claimant continues to be disabled because of job-related injury or condition. Bulletin at 2.

The Secretary undertakes to justify the "attending physician" exception for two related reasons: First, the Secretary points out that under the amended procedure, when claimants are expected to be eligible for compensation benefits for more than 60 days, they receive formal notification that they will receive such an award. However, they are cautioned to be aware that their benefits will be terminated in the event the physician selected by the claimant for treating his injury submits a report to the OWCP, indicating that the claimant is no longer disabled by the injury. Bulletin at 1.

The Secretary reasons that since claimants are put on notice that their own doctors' opinions may result in termination of benefits, they will keep themselves apprised of changes in their doctors' medical opinions. In the Secretary's view, when a physician of the claimant's choice determines that he may return to work, the claimant will be informed of that fact sufficiently in advance of termination to take appropriate action, such as consulting another doctor.

Second, the Secretary contends that, as a practical matter, a claimant will have a "fair opportunity to present his side of the case through normal physician-patient discourse and dialogue." The defendant urges that in this circumstance and informal atmosphere of "give and take," the requirements of due process are satisfied.

In response, the plaintiff submits that attending physicians, in fact, may not disclose to claimants their opinions regarding a claimant's ability to return to work. In any event, plaintiff contends doctors cannot be expected to provide the kind and extent of information that is constitutionally required.

The private interest at stake in the "attending physician" issue is again the continuation of work related compensation benefits. The court is called upon to consider the need for formal notice and the risk of error involved in the lack of it. Under the Bulletin the termination of benefits, without other notice or hearing, will be effected on the basis of an attending physician's "reasoned medical report" that the claimant has recovered from the job-related injury and has been released from further treatment. No pretermination notice is to be provided. The only hearing that is afforded is the informal consultation that may be expected between the physician and patient.

The Supreme Court has recently "described the root requirement of the Due Process Clause as being 'that an individual be given the opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Board of Education v. Loudermill, supra*, 470 U.S. at 542, 105 S.Ct. at 1493 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. at 780, 786, 28 L.Ed.2d 113 (1971)) (emphasis in the original).

To be sure, due process is a flexible requirement without rigid technical constraints, yet it calls for such protections as the particular situation demands. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). When the private interest involves the deprivation of livelihood, notice and opportunity to respond to the threatened termination are required. *See Cleveland Board of Education v. Loudermill, supra*, 470 U.S. at 543, 105 S.Ct. at 1493.

That the opinion of the claimant's attending physician is entitled to considerable weight does not mean his evaluation should not go unquestioned. It may well be that the patient has not been forewarned of the "reasoned medical report" that will terminate his compensation. On the other hand, the procedures prescribed in the Bulletin fail to recognize that the professional relationship between physician and patient may

be fragile, strained or even hostile. The defendant's argument presumes a dialogue when communication may be impaired. Indeed, what constitutes a "reasoned medical report" of sufficient persuasion to eliminate established procedural safeguards may, of itself, present factual dispute and conflicting inferences.

The validity of this component of the procedural scheme depends on the integrity of the physician's relationship with the claimant. If the doctor selected by the worker is conscientious, candid and competent, the risk of erroneous termination is slight. If the professional connection is not well founded or is impaired, the attending physician's reasoned contribution to the medical file opinion could be derived from error or misunderstanding. If so, the present procedure would preclude correction before the deprivation is suffered.

The government's interest in time and money in early disposition of a lingering disability claim is insufficient to override the fundamental due process requirements of notice and the opportunity to respond. *Id.* at 546, 105 S.Ct. at 1495.

Judge Friendly has written: "the more forthcoming the agency has been in disclosing its grounds, the stronger should be its position in asking curtailment of other procedures." *Some Kind of Hearing, supra,* 123 U.Pa.L.Rev. at 1281. The disclosure of reasons under the attending physician's concept derives not from the agency, but from the claimant's doctor. The claimant is entitled to more certain protection.

The plaintiff, as the representative of those recipients who are in danger of losing their benefits by the so-called attending physician exception, should be afforded relief against that risk.

### Other Procedural Deficiencies in the Bulletin

Despite the consensus of the parties that the principal concern of their controversy is the absence of pretermination notice of the findings of an impartial medical referee and the attending physician's report, the plaintiff has raised six other procedural deficiencies.[11] They have been advanced by the plaintiff in reply to the government's contention that the Secretary's promulgation by the Bulletin rendered the case moot. The plaintiff contends these shortages in the Bulletin operate to keep the controversy live. The list includes:

First, the Bulletin has an expiration date of September 26, 1987.

Second, the notice prescribed for the proposed action and legal basis for the termination or reduction of benefits fails to include legal authorities by way of reference to statutes, regulations or decisional law.

Third, the procedures are not to have retroactive effect.

Fourth, daily roll recipients, whose benefits continue more than 60 days, are not included in the pretermination notice requirement.[12]

Fifth, the Bulletin excludes from its coverage, suspension or forfeiture of compensatory payments imposed by way of sanctions for claimant's failure or refusal to seek or accept suitable employment pursuant to 5 U.S.C. § 8106(c).

Sixth, exclusion of coverage for claimants whose benefits are subject to forfeiture for refusal to submit to medical examination, as provided by 5 U.S.C. § 8123.

The questions presented in this list cannot be answered on the present record. The legal issues involved have not been briefed by the defendant. More important-

---

11. The six deficiencies were first articulated by the plaintiff in her Rule 5(C) Statement, filed December 5, 1986, as legal issues to be resolved on undisputed facts. They were discussed in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, also filed on December 5, 1986.

12. Under OWCP procedures, a claimant whose eligibility is expected to continue for more than

60 days, following the statutory "continuation of pay," is placed on the "periodic roll," and receives benefits every four weeks, until the OWCP determines that the claimant is no longer eligible. Claimants whose eligibility is expected by the OWCP to last less than 60 days are placed on the "daily roll," and must re-apply for benefits every two weeks. Affidavit of Charity I. Benz, October 22, 1985, at 1–2.

ly, the facts which underlie these questions are disputed. The affidavit of the Associate Director for Federal Employees' Compensation contradicts much of the factual and operative effect of the deficiencies cited by the plaintiff.[13] The questions are presented in the abstract. Justiciable questions must be framed on concrete facts; otherwise, the end result is merely advisory. Wright, *Federal Courts*, pp. 54–55 (4th Ed.1983); Davis, *Administrative Law* § 21.02 (3rd Ed.1972). In the presence of the unsettled facts that underpin the deficiencies claimed by the plaintiff, declaratory relief on the questions enumerated must await further development in the record. *See Public Affairs Press v. Rickover*, 369 U.S. 111, 112–113, 82 S.Ct. 580, 581–582, 7 L.Ed.2d 604 (1962) (Declaratory judgment should rest on an adequate and full-bodied record).

Since all the relief requested by the parties cannot be rendered on the whole case, the clerk will set the case for hearing to settle an order for partial declaratory relief, pursuant to Rule 56(d), consistent with the views expressed in this opinion.

SO ORDERED.

## ON DECLARATORY RELIEF

### OPINION AND ORDER

Plaintiff Beda Kendall challenges the procedures used by defendant, the Secretary of Labor, to terminate or reduce benefits under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101–8193 (FECA). The claimant Kendall instituted this action in federal district court to redress her complaint that the termination of her employee benefits, without pretermination notice or an opportunity to respond, violated due process under the Fifth Amendment.

The court by Chief Judge Coffrin granted preliminary injunctive relief to the plaintiff. *Kendall v. Brock*, No. 85–195 (D.Vt., Sept. 27, 1985). The substantive and procedural facts are stated in the court's Opinion and Order of September 27, 1985.

In late 1986, the parties advanced opposing motions for summary judgment. The case was then reassigned to the undersigned district judge, and the court as presently constituted granted partial summary judgment on April 10, 1987 on two issues. Inadequacy of the record precluded summary disposition as a matter of law on the remaining issues. The court concluded the following six issues constituted questions of fact for trial:

First, the Bulletin [FECA Bulletin No. 86–65] has an expiration date of September 26, 1987.

Second, the notice prescribed for the proposed action and legal basis for the termination or reduction of benefits fails to include legal authorities by way of reference to statutes, regulations or decisional law.

Third, the procedures are not to have retroactive effect.

Fourth, daily roll recipients, whose benefits continue for more than 60 days, are not included in the pretermination notice requirement.

Fifth, the Bulletin excludes from its coverage, suspension or forfeiture of compensatory payments imposed by way of sanctins for claimant's failure or refusal to seek or accept suitable employment pursuant to 5 U.S.C. § 8106(c).

Sixth, exclusion of coverage for claimants whose benefits are subject to forfeiture for refusal to submit to medical examination, as provided by 5 U.S.C. § 8123.

*Kendall v. Brock*, No. 85–195, slip op. at 22–23 (D.Vt. April 10, 1987).

After the court entered the April 10 opinion, the parties indicated on several occasions that they had reached an agreement to dismiss the case. When the last of these negotiations failed to achieve disposition of the remaining points, the court scheduled trial. On October 15, the parties filed extensive written briefs; the plaintiff again moved for summary judgment on the remaining issues. At the October 28 hearing

---

**13.** See the second affidavit of Thomas M. Markey, filed December 11, 1986 and submitted in response to Plaintiff's Rule 5(C) Statement.

and trial, the court denied the motion for summary judgment from the bench because of the plaintiff's failure to comply with Rule 5(C)(I) of this court. This rule requires a separate, short, and concise statement of facts to which the moving party claims there is no genuine issue for trial. Although plaintiff included a statement with the motion, the statement presented mere conclusions and did not narrow the facts as contemplated in the rules. The case was submitted to the court on the record which has been enlarged by the depositions, production of documents, and certain agreed facts.

The court is left to resolve the six issues reserved in its April 10, 1987 opinion.

## MERITS

The court will dismiss with prejudice the first issue, the expiration date of FECA bulletin No. 86–65. The first page of FECA Bulletin 86–65 indicated an expiration date of September 26, 1987. Subsequently, the defendant incorporated the substance of FECA Transmittal No. 87–7 and FECA Transmittal No. 87–28 into its Procedure Manual. Furthermore, the December 10, 1986 affidavit of Thomas Markey, Associate Director for Federal Employees' Compensation, establishes that the

> mere passage of time will not render the instructions contained in [the Bulletin] inapplicable to claims on or after September 26, 1987. These instructions are binding on all OWCP claims personnel until further notice; such further notice will be given when the Office revises the Federal (FECA) Procedure Manual to include these procedures.

The plaintiff concedes this issue is precluded by the amendment of the Procedural Manual and FECA Transmittal No. 87–28. The request for declaratory relief on the issue is dismissed with prejudice.

■ The second issue, defendant's failure to require that termination and reduction notices contain a listing of the applicable statutes and regulations, will also be dismissed with prejudice. Because defendant's procedures now provide that notice of proposed termination or reduction include appropriate references to statutes, regulations, and decisional law, no fact issue remains for determination by the court.

■ The third of the six issues, the retroactive effect of Bulletin 86–65, will be dismissed with prejudice. At the time plaintiff raised this issue in December, 1986, defendant was uncertain of how many class members the procedure affected. Additional research by defendant shows that the Secretary did not terminate any member of the class from wage loss compensation paid on the daily roll during the time of the class certification, other than the named plaintiff. Defendant requests the court grant the government summary judgment on this issue because the government has provided adequate relief to the class.

Plaintiff agrees with defendant that this issue no longer concerns Beda Kendall. Prior to the hearing, the plaintiff questioned the effect on other members of the class on the daily roll. At oral argument, plaintiff indicated that while it appeared originally that the government handled the daily and periodic roll recipients differently, subsequent government responses indicate that no daily roll recipients have been terminated any differently than periodic roll claimants. Plaintiff now requests, given this set of clarifying government responses, that the retroactive effect of the bulletin on the daily roll be dismissed with prejudice. The court will deny declaratory relief on this point with prejudice.

The fourth of the six issues is whether Bulletin 86–65 is deficient for failure to require pretermination and prereduction notice and opportunity to respond to daily roll recipients whose benefits continue for 60 or more days. Defendant currently does not provide any form of pretermination or prereduction notice to recipients on the daily rolls. Plaintiff contends that because daily roll recipients of more than 60 days have a protected interest in continuation of benefits that is indistinguishable from that of employees paid on the periodic roll, it is urged they should, like periodic roll recipients, be afforded the same pretermination notice.

Defendant requests judgment on this issue because there are only a few isolated cases where claimants will receive compensation benefits on the daily roll for more than 60 days without receiving pretermination notice and opportunity to respond. Defendant contends that claimants lack a legitimate expectation of a continuing entitlement to benefits. During 1986, only ten Vermont residents received benefits solely on the daily roll. Of these ten, five of them received a single check covering the entire period of claimed disability. Four of the remaining five daily roll recipients received two checks covering less than 60 days of claimed wage loss. Only one Vermont resident received daily roll payments for more than 60 days. This person received six daily roll payments before returning to work. Defendant also notes that the daily roll recipients whose payments were not converted to the periodic roll during 1986 are not members of the certified class, and none of these individuals were receiving compensation when the class was certified by the court.

While this decision may only affect a few individuals, it is the responsibility of the court to assure due process protections for every class member. If these individuals have a property interest in their continuing benefits, they deserve due process protections.

Previous decisions of the court have recognized a general property interest in wage loss benefits. This determination of a general property interest did not specifically identify whether it applied to benefits available through the daily or periodic rolls. *Kendall v. Brock*, 85–195, slip. op. at 9–10 (D.Vt. September 27, 1985).

The parties agree that "short-term" wage loss compensation benefits do not warrant pretermination notice due process, and that "short-term" recipients of wage loss compensation are those "whose disabilities are expected to last less than 60 days after the 45–day continuation of pay period."

The parties disagree, however, on the responsibilities of the defendant to employees paid wage loss compensation for sixty days or longer. Defendant suggests that the nature of claims on the daily roll does not confer to the claimant any legitimate expectation of continued entitlement, both because the compensation is always for a past period of wage loss, and because the Secretary has never accepted the claimant's disability (wage loss) as continuing in nature. The Secretary maintains that since the claimant must file for additional claims, there cannot be a property interest in receiving the claims. Plaintiff maintains that those employees on the daily roll are expected to remain there for at least 60 days, a status which implicitly suggests the employees have a continuing interest in receiving payments.

To provide due process protections by recognizing a property interest, the court must undertake the *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) balancing test:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

Here, the interest affected, the termination of benefits, is vitally important to individuals adversely affected. This is illustrated by the case of the plaintiff Beda Kendall who faced serious economic consequences until the court intervened. Although the number of recipients who face termination from the daily roll is relatively small, the additional procedural safeguards of prereduction and pretermination notice would ensure that such employees received all of the process due. Finally, although the government has not provided specific cost estimates for implementing this form of procedure, it should be relatively inex-

pensive because of the few class members involved.

█ The court finds that recipients on the daily and periodic rolls deserve similar due process protections. The emphasis by the Agency on the initial expectations of claimant's disability for deciding which roll to place the claimant on holds the possibility for arbitrary classifications based upon agency convenience. Under the present system, these classifications could have demonstrably different due process implications for the injured employees. Individuals on the daily roll for periods in excess of sixty days have a continuing property interest in future payments. This interest entitles the recipient to notice and opportunity for hearing before such benefits are ended.

█ The fifth unresolved issue examines whether Bulletin 86–65 is deficient in that it excludes from its coverage suspension or forfeiture of compensatory payments imposed by way of sanctions for claimant's failure to seek suitable employment pursuant to 5 U.S.C. § 8106(c)(1):

> (c) A partially disabled employee who
>
> (1) refuses to seek suitable work is not entitled to compensation.

Both parties now seek dismissal of this issue. Plaintiff requests dismissal without prejudice; defendant seeks dismissal with prejudice.

It appears from the discovery undertaken that no members of the class have had their benefits terminated for failure to seek suitable work. The evidence at hand demonstrates that the defendant has not in practice terminated any employee's compensation for failure to seek suitable work under § 8106(c)(1), *supra.*

No class members are currently adversely affected; however, they may be so threatened in the foreseeable future. Loss of entitlement by an employees' refusal to seek suitable work involves subjective questions. The recipient's physical impairment, the extent of his effort, and what work is suitable, are all issues that are particularly open to conflicting inferences. Since this issue has not been decided on the merits, and may well arise in the foreseeable future, the denial of declaratory relief on this issue will be without prejudice.

█ The last issue reserved for decision by the court is whether defendant's procedures for suspension of compensation for refusal to submit to, or obstruction of, a medical examination satisfies procedural due process.

Defendant requests judgment on this issue because no member of the class has had his or her benefits suspended under 5 U.S.C. § 8123(d). Defendant also contends that claimants would receive sufficient notice under the present procedures. Defendant states that

> The practice of the Boston District Office is to give a minimum of two weeks' advance notice to claimants of the scheduling of any medical examination. *See* October 6, 1987 deposition of Phyllis Crane at 36–37. Accordingly, any claimant who might be subject to suspension of benefits under 5 U.S.C. § 8123(d) receives at least 29 days (two weeks plus 15 days) pretermination notice and opportunity to respond. Such claimants thus receive all the notice to which they are entitled. Accordingly, defendant is entitled to judgment on this issue.

Defendant's Trial Memorandum at 13.

The court recognizes that there is no rule, regulation, or other authority or procedure binding upon the Secretary which mandates that a claimant whose benefits are to be terminated or suspended, pursuant to § 8123(d) of Title 5, United States Code, be afforded any definite period in which to respond without penalty. It was observed in the court's prior decision of April 10 that the provisions of 5 U.S.C. § 8123 afford considerable protection to the employee who is summoned to submit to an examination at the insistence of the Secretary. The employee is entitled to be paid necessary and reasonable expenses incurred in the examination, including transportation and loss of wage. Clearly, the statutory scheme imposes some responsibilities on the partially disabled employee to see to it that his compensation continues without interruption. It is only the em-

ployee who "refuses to submit to or obstructs examinations that is subject to suspension" of compensation. And then it is only for the length of time the employee's refusal persists. The present procedure affords the employee at least 45 days to correct any inadvertence or misunderstanding that may have interdicted the examination.[1]

The record indicates that the procedures now in place are operating without detriment to any class member. The court sees no need for declaratory relief to correct an administrative procedure that works satisfactorily. This issue will be dismissed with prejudice.

The plaintiff requests the court decide and grant declaratory relief on two further issues. Plaintiff requests the court to:

7. Rule that class member recipients of wage loss compensation paid on the periodic roll be afforded a certain level of pre-termination/pre-suspension due process protections, such protections containing at a minimum the elements set out in this Memorandum at pages 41–42.[2]

8. Rule that class member recipients of the benefit types set out in the class definition (medical benefits, as defined; attendant's allowance; augmented compensation; survivors' benefits, and schedule award, as defined) whose benefits the defendant seeks to terminate or suspend be afforded those same basic elements of pre-termination/pre-suspension due process protections as are described

in the immediately preceding paragraph (No. 7)....

Plaintiff's Trial Memorandum and Supplemental Memorandum of Law in Support of Motion for Summary Judgment, October 15, 1987, at 53–54.

These issues were not reserved nor committed to further proceedings in the court's earlier decision. The decision took the pains to point out that the unsettled underlying facts precluded decision on the six points that required trial.

Similar shortages in the present record prevent the court from undertaking to rule on the additional issues pressed by the plaintiff. The underlying facts have not been adequately addressed in the evidence. The Secretary has not responded to these questions with evidence or argument. In this posture on the record, declaratory relief will not be granted. *See Public Affairs Press v. Rickover*, 369 U.S. 111, 112–113, 82 S.Ct. 580, 581–582, 7 L.Ed.2d 604 (1962).

The points concern future action that may never occur. To this extent, the requested ruling would be primarily advisory. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

Of equal importance is the precept that declaratory procedure, provided by way of the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, should not be engaged to preempt nor prejudge administrative proceedings. *Public Service Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); C. Wright, *Federal Courts* § 100 (4th ed. 1983).

---

**1.** The letter states that:

If for any reason you cannot keep this appointment, you must advise us in writing of your reason for not keeping the appointment within fifteen (15) days of the date of the appointment. Only legitimate documented emergencies will be deemed adequate grounds for not keeping the appointment. If you fail to provide an acceptable reason for not appearing for the appointment, benefits will be suspended per Section 8123.

**2.** Plaintiff requests the following provisions:

A written notice provided to the recipient a reasonable time (at least thirty days) prior to any termination or reduction of benefits, describing the action to be taken and the factual

and legal (general statutory citation and general federal regulation citation) bases for the action, including copies of the medical or other evidence relied upon the agency in taking its action, and (B) an opportunity for the recipient to submit evidence and/or argument to the agency within thirty days from the date of the letter prior to termination or reduction of benefits, which evidence or argument will be considered by the agency before any final decision is made to terminate or reduce benefits.

Plaintiff's Trial Memorandum and Supplemental Memorandum of Law in Support of Motion for Summary Judgment, October 15, 1987, at 41–42.

The combination of these factors constrains the court against undertaking to adjudicate and grant declaratory relief on the additional questions sought to be presented by the plaintiff's trial brief.

A judgment order will be entered, as provided in Rule 58 Fed.R.Civ.P., granting declaratory relief for the plaintiff on the attending physician issue decided in the Memorandum of Decision of April 10, 1987, and on the daily roll issue.

The plaintiff's claim for declaratory relief in behalf of the partially disabled recipient who is at risk of termination for refusal to seek suitable work, as provided in 5 U.S.C. § 8106(c)(1), will be *dismissed without prejudice*.

The multiple notice issue, decided in the court's April 10, 1987 Memorandum of Decision, is dismissed with prejudice. The remaining claims for declaratory relief requested by the plaintiff in behalf of the class she represents are denied *with prejudice*. These claims include the expiration date of FECA Bulletin 86–65; the failure to include references to statutes, regulations and decisional law in the notice of proposed termination or reduction of benefits; the retroactive effect of Bulletin 86–65; and the suspension of compensation under 5 U.S.C. § 8123 for refusal to submit to, or obstruction of, a medical examination.

It will be SO ORDERED in the judgment which will follow.

## JUDGMENT ORDER

Upon consideration of the facts and conclusions of law reported in the opinion filed herewith, and the prior decisions entered September 27, 1985 and April 10, 1987, all pursuant to Rule 52(b) of the Federal Rules of Civil Procedure, it is ORDERED AND ADJUDGED:

1. The current administrative procedures adopted by the defendant in his official capacity as Secretary of the United States Department of Labor, included in the Federal Employees' Compensation Act (FECA) Procedure Manual, as amended by FECA Bulletins 86–65, 87–27, and 87–48, and FECA Transmittals 87–7, 87–18, 87–28, and 87–34 for federal workers' compensation benefits that have continued for a period exceeding sixty days from the date of enrollment for payment, are consistent with the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

2. The remaining issues and claims asserted in the plaintiff's complaint for equitable and declaratory relief are dismissed as provided under Rule 41 of the Federal Rules of Civil Procedure as herein specified:

A. Claim for relief in behalf of partially disabled recipient who is at risk of termination for refusal to seek suitable work as provided in 5 U.S.C. § 8106(c)(1) is dismissed *without prejudice*.

The following claims are dismissed *with prejudice*:

B. Claim for multiple pretermination notice following the report of a designated impartial medical specialist.

C. Expiration date of FECA Bulletin 86–65.

D. Failure to include references to statutes, regulations, and decisional law in the notice of proposed termination or reduction of benefits.

E. Retroactive effect of Bulletin 86–65.

F. The suspension of compensation under 5 U.S.C. § 8123 for refusal to submit to, or obstruction of, a scheduled medical examination.

## AMENDED JUDGMENT ORDER

A declaratory judgment order was entered in this cause on December 22, 1987. On January 7, 1988 the plaintiff in behalf of the class she represents, filed a motion to Alter or Amend the Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to clarify the declaratory relief granted in the court's order of December 22, 1987. The defendant has advanced no objection to the proposed amendments suggested by the class representative. Upon consideration of the present motion and the findings of fact and conclusions of law entered by Chief Judge Coffrin in granting

preliminary injunctive relief September 27, 1985 and this court's opinions entered April 10 and December 22, 1987, the motion to amend is granted in part and denied as to the remainder.

Accordingly, Paragraph 1 of the Judgment Order of December 22, 1987 is confirmed and amended by adding this supplementary declaration to clarify and implement Paragraph 1 of the judgment as first written:

1A. The members of the class of recipients who have received wage loss compensation paid under the Federal Employees Compensation Act for a continuous period of sixty days or more, after enrollment for payment on either the "daily" or "periodic" rolls, are entitled to reasonable notice and an opportunity to respond prior to termination or reduction of wage loss compensation.

B. To safeguard this constitutional mandate, the defendant Secretary of Labor shall notify the recipient of wage loss compensation that has been in continuous effect for more than sixty days, of any preliminary determination of the Office of Workers Compensation Programs to terminate or reduce the award of such benefits under the Act.

(1) Consistent with the Secretary's current procedures, the notice shall state the reasons, including the legal and medical basis, if applicable, for the proposed administrative action which justifies the change in benefits. The letter of notification will inform the recipient of his right to submit evidence and argument against the proposed action;

(2) The notice provided by the Secretary will further inform the recipient that termination or reduction of wage loss compensation will be made effective thirty days from the date of the notice unless the recipient responds by a request for further hearing and consideration of the proposed action within thirty days of the date of the notification.

(3) Upon receipt of such response from the recipient, termination or reduction shall not be made effective until the defendant has considered and notified the recipient of the result and reason for the defendant's action on the claimant's response.

(4) In the event the medical evidence submitted in recipient's response creates a conflict in the medical record which requires referral to an impartial medical specialist, as provided in 5 U.S.C. § 8123, the recipient will be advised:

(a) the reason for the referral;

(b) that the outcome of the referral may result in immediate termination or reduction of compensation without further notice; and

(c) further evidence or argument in support of the claim for continuing compensation should be submitted within a reasonable time to be specified by the Office of Workers Compensation Programs.

(5) The provisions for notice prescribe above shall be directed to the recipient. Communications between the Office of Workers Compensation Programs and the physician engaged by the claimant to treat his work related disability will not meet the requirements of due process, nor do service for the notice and hearing requirements.

Paragraph 2 of the Judgment Order entered December 22, 1987, is confirmed without modification.

